UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA WESTERN DIVISION
NO. 15-HC-2198-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM FAGAN,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PETITIONER'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby files these Proposed Findings of Fact and Conclusions of Law.

## I. INTRODUCTION

Petitioner, the United States of America (the "Government"), seeks to civilly commit Respondent, William Fagan ("Fagan"), as a "sexually dangerous person" under Section 302(4) of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), codified at 18 U.S.C. §§ 4247-4248. In order to civilly commit Fagan pursuant to §§ 4247-4248, the Government must prove by clear and convincing evidence that he is "sexually dangerous." Under the Adam Walsh Act, a person is sexually dangerous if he "has engaged or attempted to engage in sexually violent conduct or child molestation and . . . is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). In order to

determine that a person is sexually dangerous to others, a court must find that he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). Therefore, the Government, by clear and convincing evidence, must prove that (1) Fagan has engaged or attempted to engage in sexually violent conduct or child molestation, (2) Fagan suffers from a serious mental illness, abnormality, or disorder, and (3) that based on that serious mental illness, abnormality, or disorder, Fagan would have serious difficulty refraining from sexually violent conduct or child molestation.

The Government proposes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### A. Procedural History

The Government commenced the instant litigation by filing a Certificate of a Sexually Dangerous Person against Fagan on August 31, 2015. (D.E. 1; Ex. 6). This case is currently set for trial on May 2, 2016. (D.E. 20).

In the parties Amended Joint Proposed Pre-Trial Order, the Government identified five witnesses: 1) Dr. Dawn Graney, 2) Dr. Karen Parker, 3) William Fagan, 4) Marissa Vasquez, and 5) Andre

Taylor. Fagan identified three witnesses, namely Dr. Joseph Plaud, Dr. Diane Lytton, and William Fagan. (D.E. 32).

B. Personal and Family Data

Fagan was born in 1973. (Ex. 20, Bates 1606). He was adopted shortly after birth, and he has adopted siblings. His adoptive father has remarried several times since his adoption. (Ex. 20, Bates 1606-08). Fagan has no contact with his adoptive father.

Fagan resided in Florida during his teenage years. In 1987, at age 14, he withdrew from the seventh grade with a grade point average of 1.67. For his eighth grade year, he attended the Eckerd Wilderness Program, a camp for troubled youth. He ran away from the camp on several occasions. Fagan attended King's Academy school during ninth grade. However, school officials discovered that he consumed alcohol in violation of school policy, and he was asked not to return for the following school year. He attended tenth grade at Palm Beach Gardens High School, but withdrew from school in March 1991. He subsequently received a general equivalency high school diploma. (Ex. 20, Bates 1611).

In December 1999, Fagan, age 26, married Marissa Goldman, age 18. One child was born from this relationship. They separated in November 2000, and Fagan’s wife subsequently filed

for divorce. (Ex. 20, Bates 1608). Fagan has since given up his parental rights to the child.

C. <u>Criminal History</u>

In May 1990, criminal charges were brought against Fagan in Florida state court for numerous counts of felony Lewd Assault and related charges based on allegations that he sexually assaulted numerous girls ranging in age from about 12 to 16 years old in 1989 and 1990 and an allegation that he assaulted a 14-year old boy.[1] (Exs. 8-19; Ex. 20, Bates 1604-05). The nature of the charged offenses is detailed in the record evidence, much of which is summarized in the enumerated paragraphs below.

1. J.G., a 13-year old girl, informed authorities that around January or February of 1989, she, Fagan and other kids were playing tag at a park. Fagan, while hiding under some stairs with J.G., began rubbing her back and unhooked her bra. She told him to stop, but he continued by forcing her arm out of her bra. She again told him to stop. He tried to take her shirt off. He picked her up and carried her to the beach, where he told her he wanted to put her on the ground and open her legs. She refused, but he laid on top of her and attempted to put his

---

[1] Such allegations came to light during an investigation surrounding the murder of a local, teenaged girl in March 1990. During such investigation, several girls informed authorities that Fagan had sexually offended against them.

hand down her pants. She told him to get off of her. He lifted her shirt. After she freed herself, Fagan told her he was drunk and stoned. (Ex. 16, Bates 1985-86).

Fagan was later charged with two counts of Lewd Assault against J.G. The case was nolle prossed. (Ex. 16, Bates 1169-70). Fagan has admitted that it was a good possibility that he lifted J.G.'s shirt and kissed her breast, that he was too assertive, and that she had told him to stop, but he denied assaulting her.

2. S.E., a 13-year old girl, informed authorities that the following events took place at her home around January 1989. Fagan, after kissing and fondling S.E.'s breasts, undressed himself, got on top of S.E., touched his penis to her breasts, and ejaculated. She told him to get off of her. He attempted to put his hand down her pants, but she stopped him. He made a second attempt, but she again stopped him. Later that day, he removed her shirt and bra. She told him she didn't want him to proceed any further and to let her get up. He told her no. He climbed on top of her and pinned her arms back. She again told him to get off of her, but he told her no. He then fondled and kissed her breast and attempted to remove her pants. She was able to get away from him and told him to get out of her house. She informed the police that what frightened her the most was

that she was unable to stop Fagan's sexual advances. (Ex. 15, Bates 1987-89; Ex. 20, Bates 1605).

Fagan was initially charged with two counts of Lewd Assault against S.E. (Ex. 15, Bates 1171-73). The case was subsequently referred to juvenile court (Ex. 20, Bates 1605), where Fagan was adjudicated delinquent after pleading No Contest to Indecent Exposure. He was sentenced to Community Control and counseling until his 19th birthday. (Ex. 5, Bates 2343; Ex. 17).

3. T.B., a 14-year old girl, reported that between June and July of 1989, while at a party, Fagan attempted to kiss and force her to the ground. She freed herself and went back into the house. The following day, T.B. agreed to let Fagan give her a ride home on his scooter. During the ride, he made an unexpected turn, stopped the scooter, pinned her to the seat and attempted to kiss her. She may have threatened him by mentioning her boyfriend. He then allowed her to drive the scooter with him on the back. She reported that he undid her bathing suit top while she was driving, threw it, and fondled her breasts. She retrieved the bathing suit top, and he apologized for his conduct. He took over driving the scooter, again stopped it, and tried to remove her top and bottoms. He threw her to the ground and began removing his shorts while pinning her to the ground. He attempted to touch her vaginal area, but was unsuccessful. She finally freed herself. She

reported that Fagan became more frustrated as the incident progressed. He was charged with Lewd Assault, but the charge was nolle prossed. Fagan has admitted to throwing the girl's bathing suit top away, but denies having engaged in any sexual contact with her.

4. G.V., a 14-year old boy, reported that in June 1989, Fagan asked G.V. to go into the woods with him. After arriving in the woods, Fagan told G.V. to take off G.V.'s clothes or Fagan would kick his ass. G.V. took his clothes off and cried. Fagan ordered G.V. to lay down on the ground, and Fagan then rammed a pinecone into G.V.'s groin area. Fagan threatened G.V. to not tell anyone. Fagan then left the area, taking G.V.'s shorts and underwear with him. G.V. reported the assault to his mother, who informed police. (Ex. 5, Bates 2345). Fagan has admitted to taking G.V.'s clothes, but denies assaulting him. (Ex. 31, pp. 109-113). He was later charged with Assault, Battery, Robbery, and Lewd Assault, but the charges were nolle prossed. (Ex. 5, Bates 2345).

5. T.W., a 14-year old girl, reported that while at a party in July 1989, Fagan tried to remove her shirt but she did not allow him to. He then put his hand down her pants and digitally penetrated her. He tried to remove her pants, but she didn't let him. Fagan was charged with Sexual Battery and Lewd Assault. Such charges were nolle prossed. (Ex. 10). Fagan

admitted to Dr. Lytton that he fondled the girl's breasts and digitally penetrated her. (Respondent's Ex. 3, Bates 6330).

6. D.D., a 13-year old girl, reported that while swimming at the beach with some friends during the summer of 1989, Fagan asked her to stay in the water with him. She agreed, and he then untied her bathing suit top and put it in his bathing suit. He told her he would give it back if she hugged him. She hugged him, at which time he tried to remove her bottoms. During this time, he touched her breast, her vaginal area and buttocks. He stopped only after D.D.'s friends called out to her from the beach. Fagan denies that his conduct was non-consensual. [Parker]. Fagan was charged with Lewd Assault, but the charge was nolle prossed. (Ex. 12, Bates 2523-29).

7. J.K., a 13-year old girl, reported that during the summer of 1989, she got in the cab of her friend's truck to turn up the volume on the radio. Fagan got in the cab on top of her. She immediately told him to get off of her. He laughed and forcibly removed her bathing suit top that was under her shirt. He tried to remove her bottoms, and fondled her breasts and buttocks. She told him to get off of her, and that she hated him. She retrieved her top, hit him on the arm, and walked away. He also reportedly grabbed her butt while she was talking to her boyfriend. (Ex. 12, Bates 2532-35).

Fagan was charged with Lewd Assault; the charge was nolle prossed. (Ex. 12, Bates, 2530-31).

8. G.S., a 15-year old female, reported that in the summer of 1989, Fagan took her into ocean water over her head, held her arms behind her back to the point it hurt, and removed her top. On another occasion, she was sitting in Fagan's car at the beach waiting for some friends to arrive. Fagan then drove away with her in the car. She told him she needed to return. However, he stopped the car, removed her bathing suit top from under her shirt, and threw it in the back seat. When she attempted to retrieve it, Fagan climbed into the back seat with her and locked the doors. She pushed him away, but he kept trying to kiss her, fondled her breasts and buttocks, and attempted to put his hands down her pants. He eventually drove her back to the beach. (Ex. 12, Bates 2543-46).

Fagan was charged with False Imprisonment and Lewd Assault; the charges were nolle prossed. (Ex. 12, Bates 2541-42). Fagan reported no recollection of this incident.

9. M.S., a 15-year old girl, reported that on September 3, 1989, while at a party, she and T.W., a friend, went into a bedroom to sleep. Fagan followed them into the bedroom. After T.W. fell asleep, Fagan began kissing M.S. and fondling her breasts. She told him no, but he removed her pants and digitally penetrated her vagina. She then yelled and left the

bedroom to go down stairs. Fagan pushed her down the stairs, but she was able to grab the railing and get away from him. (Ex. 12, Bates 2550-56).

Fagan was charged with Sexual Battery, Lewd Assault, and Battery; the charges were nolle prossed. (Ex. 12, Bates 2547-49).

10. A.W., a 14-year old girl, reported that sometime between September and November 1989, she was staying the night with J.G., another girl, when Fagan arrived at the house. The three talked for a while in a room. After J.G. left the room, Fagan locked the door. He then removed his and A.W.'s clothing and pushed her on the bed. He placed his penis in her vagina. She repeatedly told him to stop and to get off of her, but he did not stop. After she raised her voice, he stopped. (Bates 1983; Ex. 9, Bates 1984; Ex. 4, Bates 2351-52).

On another occasion, Fagan fondled A.W.'s breasts and attempted to remove her shirt and shorts, but she stopped him, explaining that she had a cyst removed during surgery and couldn't go any further. According to A.W., he got mad and she got out of the car and got away. (Ex. 9, Bates 1978-79).

Fagan was charged with Sexual Battery and Lewd Assault against A.W. He plead No Contest in juvenile court to Indecent Exposure, was adjudicated delinquent, and sentenced to community

control and counseling through his 19th birthday. (Ex. 9, Bates 1164-65; 2642).

11. H.H., a 12-year old female, reported that in November 1989, she was walking to a friend's house. Fagan, who was walking behind her, grabbed her arms, pulled them behind her back and attempted to unbutton her shirt. She told him to "cut it out," but he continued to hold her and touch her breasts. He tried to turn her around and kiss her, but she pushed him away. (Ex. 12, Bates 2574-76).

Fagan was charged with Lewd Assault; the charge was nolle prossed. (Ex. 12, Bates 2572-73).

12. A.L., a 14-year old girl, reported that during the time she dated Fagan in 1990, he digitally penetrated her vagina against her will on numerous occasions. She also reported that Fagan forcibly had sexual intercourse with her on two occasions against her will. On both occasions, she told him she did not want to have sex with him, but he forcibly held her down and had vaginal intercourse with her. She physically resisted him on both occasions, scratching and hitting him. She reported that in February 1991, Fagan threw her against some gas pumps at a gas station, causing her to be hospitalized due to her injuries. She reportedly failed to report his sexual offenses sooner because she feared him. Fagan was charged with two counts of Lewd Assault; such charges were nolle prossed. (Ex. 11).

13. On March 17, 1990, a 14-year old girl named Rachel Hurley was found murdered in Carlin Park, near the beach in the local area where Fagan lived. (Ex. 31, pp. 28-29). Fagan was an initial suspect. The case remains unsolved.

14. On or about April 1, 1990, J.A.G., a 15-year old girl, and Fagan began kissing on a trampoline in the backyard of a residence. Someone came out of the house, and Fagan told J.A.G. to be quiet and lay down on the trampoline. She resisted, and he pushed her down. He pulled her pants down to her knees and she began to cry, and asked him to stop. He told her it was "okay". He pinned her arms down with one hand. She kept telling him to stop and that it was hurting. He pulled her underwear down and his pants down. He penetrated her vagina with his fingers and attempted to penetrate her vagina with his penis. He ejaculated on her shirt and stomach. After the assault, she showered. (Ex. 8, Bates 2647-2656).

A person at the house reported walking onto the back porch and hearing Fagan telling J.A.G. to be quiet. That witness also reported seeing J.A.G. run into the house to shower, saying "get it off me." When confronted about the incident by others at the house, Fagan denied taking his shorts off, but others pointed out to him that his short were on inside out. Fagan then admitted to taking off his shorts, but not his underwear. He admitted that he had reached under J.A.G's shirt and into her

pants. He denied ejaculating on J.A.G. and reported that he couldn't have sex with her because he had a commitment to another girl. (Ex. 8, Bates 2648-2656).

Fagan was charged with Sexual Battery and 3 counts of Lewd Assault against J.A.G. (Ex. 8, Bates 1166-67). He plead No Contest in juvenile court to Indecent Exposure, was adjudicated delinquent, and sentenced to community control and ordered to following any recommended counseling through his 19th birthday. (Ex. 8, Bates 2642).

15. J.G., a 14-year old girl, reported that during the summer of 1990, she agreed to allow Fagan visit her at her house. While waiting for him, she fell asleep. Fagan entered the house through the kitchen window, entered her room, woke her up by rubbing her back. They went to outside to the pool so as not to wake her family. They started kissing, and J.G. then told him "no". He stopped, but then digitally penetrated her vagina. He attempted to remove her pants, but she told him to stop. He said "ok", but removed them anyway. She told him it was time for him to leave, but he got on top of her and ejaculated on her chest area. He then left. (Ex. 14).

Fagan was initially charged with Lewd Assault. (Ex. 14, Bates 2470). A petition was brought in juvenile court against him for Indecent Exposure (Ex. 14, Bates 2474-75), to which he subsequently plead No Contest and was adjudicated delinquent.

He was sentenced to Community Control and counseling until his 19th birthday. (Ex. 17).

16. On August 5, 1991, Fagan was arrested for Sexual Battery of S.N., a 16-year old female, Disorderly Intoxication, and two counts of Battery on Police Officer. S.N. reported to authorities that, during a party at a hotel, Fagan became upset and disruptive. S.N. followed him outside the hotel in an attempt to calm him down. After they were alone near a dumpster, Fagan forced S.N. to the concrete ground, removed her clothing and forced sexual intercourse upon her. She told Fagan to stop, but he told her to "shut up or I'll kill you." She continued to tell him to get off of her and that he was hurting her. Some friends saw S.N. struggling against Fagan, and they summoned help from others in the group. (Ex. 18; Ex. 20, Bates 1599-1600).

Fagan then fled the scene of the assault. Paramedics and police arrived on the scene where Fagan was then located. He kicked a police officer and tried to hit another officer. He admitted to being under the influence of cocaine, and he had a blood alcohol concentration of .27. During questioning by police, Fagan "guessed" that he sexually assaulted S.N., but has claimed that he has no memory of the incident. (Ex. 18; Ex. 20, Bates 1599-1600).

On February 18, 1992, Fagan plead guilty to one count of Battery on a Police Officer and nolo contendere to misdemeanor Battery, lesser included of Sexual Battery, against S.N. He received three years of probation. (Ex. 18, Bates 1517).

17. In August 1993, Fagan was arrested in Florida on felony cocaine charges. On December 17, 1993, he plead guilty to 3 counts of Sale of Cocaine and 1 count of Conspiracy to Sell Cocaine. He received a 364-day jail sentence followed by community control. He was released from custody on June 5, 1994. In January 1995, his community control was revoked, and he was placed on 5 years of probation. In October 1997, his probation was revoked for moving from his approved residence and for driving under the influence, and he sentenced to 3 years of custody. His probation for his 1991 conviction was revoked, and he was sentenced to 364 days in jail, with credit for time served. (Ex. 20, Bates 1599-1603).

18. On February 24, 2003, Fagan was adjudicated guilty in federal court of Felon in Possession of a Firearm and sentenced to a 180-month term of imprisonment to be followed by 3 years of supervised release. (Ex. 21). Fagan's projected release date from this sentence was September 27, 2015. (Ex. 6).

19. In June 2003, Fagan was charged in the state of Florida with Sexual Battery on a Person Less than 12 Years Old and False Imprisonment, for offense behavior he engaged in on August 12,

2002 while babysitting M.P., an 8-year old girl and T.P., her 6-year old brother. During such time, Fagan played "cops and robbers" with the children. At some point, Fagan tied the boy's hands and feet in a "hog tie" style and left him. Fagan then asked the girl if she wanted to play with some shaving cream. She declined, and Fagan carried her into her bedroom. He laid her on the bed and, while holding her down, took off her shirt, shorts and underwear. While she was lying face down, he sprayed shaving cream on her buttocks, flipped her over and sprayed shaving cream on her chest and vaginal area. She told Fagan she didn't want to play anymore. He then spread her legs and sprayed shaving cream into her vagina, while digitally penetrating her vagina. She kicked, but was unable to get away because Fagan was holding her down. Fagan then told the girl to take a shower. (Ex. 22).

On June 28, 2005, Fagan plead guilty to Battery of a Child and False Imprisonment. He received a five-year term of imprisonment for the Battery offense plus one year and one day for False Imprisonment, with no supervision to follow. (Exs. 23-24). These sentences expired on April 17, 2008. (Ex. 24). As a result of such convictions, Fagan is required to register as a sex offender in Florida. (Ex. 28).

20. On August 31, 2015, Fagan was certified as a sexually dangerous person pursuant to Title 18, United States Code,

Section 4248. At the time of his certification, Fagan was in the legal custody of the Federal Bureau of Prisons at the Federal Correctional Institution in Butner, North Carolina, serving the remainder of the above-referenced federal sentence. (Ex. 6).

D. Substance Abuse History and Treatment

Fagan has a long history of drug and alcohol abuse, along with several drug and alcohol-related arrests. He reportedly began using alcohol and cocaine by age 16, and consumed them regularly thereafter. He has used numerous other drugs, including marijuana, OxyContin (a narcotic), LSD, Xanax, and prescription medications. (Ex. 20, Bates 1610-11).

During a 1991 arrest for sexual battery, disorderly intoxication, and battery on a police officer, his blood alcohol level was recorded as .27. He admitted to being under the influence of alcohol and cocaine at that time.

While on probation in 1992, he tested positive for marijuana. In December 1993, his probation was revoked after his arrest for selling cocaine.

In 1995, Fagan was ordered to participate in the Palm Beach County Sheriff's Office Drug Farm, an 18-month, in custody, drug treatment program. He was released from the program in 1996. However, he subsequently relapsed and continued abusing drugs. (Ex. 20, Bates 1610).

Fagan regularly used cocaine and other drugs on the weekends in 2002, the last time he was in the community. He admits to probably having used cocaine the night before the events which precipitated his arrest in 2002 for sexually assaulting the 8-year old girl. (Ex. 31, pp. 49).

In 2007, while in BOP custody, Fagan completed a 40-hour drug education program. In 2009, he declined to participate in the BOP's Residential Drug Abuse Program. (Ex. 27).

E. Mental Health History and Treatment

In 1990, Fagan was referred for a psychiatric evaluation, following a report that he attempted suicide by overdosing on aspirin. He was diagnosed with Adjustment Disorder with Mixed Emotional Features and referred for outpatient therapy. Fagan participated in psychiatric therapy with a Dr. Resner. (Ex. 20, Bates 1609).

In 1992, Following Fagan's 1991 arrest for sexually assaulting S.N., he underwent a psychological evaluation by a Dr. Hession. According to the presentence report, Dr. Hession opined that her report, test and interview data indicate that Fagan was the classic picture of a psychopath or anti-social personality. She noted that he was "egocentric, insightless, and shallow and superficial in his relationships with others, using them only to meet his own personal ends." (Ex. 20, Bates 1609-10).

In 2006 and 2007, Fagan participated in the BOP's CODE program, a residential, cognitive behavioral treatment program for inmates with substance abuse and/or mental disorders. He has not participated in any sex offender treatment.

F. Forensic Evaluation of Dr. Dawn Graney

Dr. Dawn Graney, is a licensed forensic psychologist employed by the BOP at FCI Butner. Dr. Graney has conducted numerous sex offender evaluations on behalf of the BOP and has testified as an expert witness in sex offender civil commitment hearings. Dr. Graney's curriculum vitae and forensic evaluation of Fagan, dated July 30, 2015, are located at Government's Exhibits 1 and 2.

Dr. Graney's report addresses various areas of Fagan's background and history, including his developmental, personal, marital, educational, work, substance abuse, criminal, mental health, and medical history. Dr. Graney's report also includes her diagnostic impressions, her use of actuarial instruments and her opinion regarding Fagan's sexual dangerousness. Dr. Graney interviewed Fagan as part of her evaluation. [Ex. 1].

As part of her evaluation, Dr. Graney had Fagan complete the Multi-Phasic Sex Inventory II ("MSI II"), a self-report questionnaire designed to measure a variety of psychosexual characteristics. The scoring and interpretation of the MSI II was completed by the test publishers. The MSI II test results

indicate that Fagan was guarded and somewhat evasive in his test responses, that he presented in the highly defensive range in regards to his interests in sex, and attempted to project himself as asexual. He further presented as being sexually interested in adult females. He omitted test items pertaining to having been able to get a child to do sexual things with him and having reached orgasm while molesting a child. He reported he has always known it was wrong to engage in sex with underage persons or to force sex upon a person.

Dr. Graney assessed Fagan for the presence of psychopathy using the Hare Psychology Checklist-Revised ("PCL-R"). Fagan scored a 29, which falls in the 79th percentile when compared to scores of other male offenders. The maximum score on the PCL-R is 40, and the cut-off for psychopathy is 30.

Dr. Graney opined that, according to the criteria set forth in the DSM-5, Fagan warrants the following diagnoses: (1) Otherwise Specified Paraphilic Disorder (non-consent); (2) Antisocial Personality Disorder (psychopathic traits); (3) Alcohol Use Disorder, Moderate, In a Controlled Environment, and; (4) Cocaine Use Disorder, Moderate, In a Controlled Environment. Dr. Graney explained the bases for each of her diagnoses and opined that such diagnoses qualify as serious mental illnesses, abnormalities, or disorders in this case. Further, she opined that as a result of these diagnoses, Fagan

would have serious difficulty in refraining from sexually violent conduct.

With regard to the Otherwise Specified Paraphilic Disorder (non-consent) diagnosis, Dr. Graney explained that Fagan meets criteria for that diagnosis based, in part, on his persistent forced sexual contact with numerous, similarly aged non-consenting females and at least one male during the period of 1989 to 1991, and his forced digital penetration of an 8-year-old girl in 2002. Dr. Graney noted that while Fagan claimed that his sexual encounters from 1989 to 1991 were consensual, the victims' accounts of the incidents suggest that Fagan was aware of the non-consenting nature of his sexual behaviors. Dr. Graney noted that many of the victims' accounts indicated that Fagan forcibly (or forcibly attempted to): disrobed some of the victims, kissed, fondled, and vaginally penetrated some of the victims with his penis or fingers.

As additional support for this diagnosis, Dr. Graney noted that Fagan sexually assaulted and attempted to sexually assault some victims while they were in precarious positions (e.g. in deep ocean water; riding a scooter; unaware of Fagan's presence/intent), which limited their ability to resist his advances/assaults. She also noted that Fagan continued his forced sexual contact on several occasions, despite the victim telling him "no" or to stop. She noted that on at least three

occasions, despite the victims' verbal and physical efforts to stop the sexual contact, Fagan continued the assault by ejaculating on the victims, suggesting that he maintained an erection despite the victims' distress. She opined that Fagan's maintaining an erection during the sexual assaults shows he was specifically aroused to the non-consensual nature of the assaults. As further support for this diagnosis, Dr. Graney noted that despite Fagan's arrest for numerous alleged sexual offenses in 1990 and his being suspected of the 1990 rape of a teenaged girl, he sexually assaulted a teenaged girl by a dumpster outside a hotel in 1991. Despite being arrested and charged for the 1991 conduct, and convicted of a lesser charge, he went on to forcibly sexually assault an 8-year-old girl in 2002.

Dr. Graney also diagnosed Fagan with Anti-Social Personality Disorder. As support for this diagnosis, she noted Fagan's repetitive violations of social norms/rules prior to age 15, including his use of marijuana, being sent to a camp for troubled youth, and running away from the camp on several occasions. As further support for this diagnosis, she noted his numerous arrests/convictions despite negative consequences; his impulsivity and failure to plan ahead, as demonstrated by his unstable employment, repeated arrests, failure to comply with supervision, and chronic substance abuse; his repeated use of

aggression to gain compliance; a reckless disregard for the safety of himself and others, as demonstrated by his criminal behaviors, and; his failure to take responsibility, or have remorse, for his conduct.

Dr. Graney opined that Fagan's use of alcohol and cocaine prior to his most recent arrest support supports her diagnoses of Alcohol Use Disorder, Moderate, and Cocaine Use Disorder, Moderate.

Dr. Graney utilized the STATIC-99R to assess Fagan's risk of sexual re-offense. She scored Fagan with a 9 on a scale that ranges from -3 (lowest risk) to 12 (highest risk). Individuals with the same score from the High Risk/High Need group sample have been found to sexually reoffend at a rate of approximately 42.2 percent within five years.

Dr. Graney also considered whether any dynamic risk factors are present in this case that could exacerbate Fagan's risk for sexual re-offense. She opined that the following dynamic risk factors are present for Fagan: a relative lack of significant social influences, intimacy deficits, problems with sexual self-regulation, non-cooperation with supervision, and problems with general self-regulation. With regard to these risk factors, Dr. Graney noted that, aside from Fagan's stepsister, who resides in Texas, he lacks any significant social support. She noted that Fagan's history is positive for intimacy deficits, as

demonstrated by the breakup of his marriage (his only serious relationship), his apparent hostility toward women, and his lack of concern for others. Fagan's problems with sexual and general self-regulation while in the community are apparent from the evidence, and his non-cooperation with supervision is evident from his repeated violations of probation.

Based on the above and as set forth in her report, Dr. Graney opined that Fagan meets the criteria for civil commitment under the Adam Walsh Act.

As support for her opinion that Fagan would have serious difficulty in refraining from sexually violent conduct or child molestation if released, she relied upon the record evidence, including Fagan's score on the STATIC-99R, the presence of the aforementioned dynamic risk factors for sexual re-offense, his lack of sex offender treatment, his history of sexual offending and drug and alcohol abuse, his poor volitional control, and his offending while under supervision and under circumstances where likely to get caught. She noted that Fagan's lack of insight into his sexual offending is highly concerning, given the repeated problems he has experienced due to his sexual offending.

Dr. Graney noted that while Fagan is subject to a three-year term of supervised release, following his release from federal custody, considering his diagnoses, history and risk

factors, along with his limited social support and community resources, his prognosis is considered poor.

G. Forensic Evaluation of Dr. Karen Parker

Dr. Parker is a forensic psychologist who specializes in sexual offender evaluations. She has conducted numerous sex offender forensic evaluations and has testified as an expert witness in Florida state sex offender civil commitment hearings. (Ex. 3). In 2008, Dr. Parker completed a forensic evaluation report on Fagan, wherein she opined that Fagan met criteria for civil commitment as a sexually violent person under Florida's civil commitment law.[2] (Ex. 4).

On November 30, 2015, Dr. Parker completed a forensic evaluation report on Fagan on behalf of the government in the instant case. She opined that Fagan meets criteria for civil commitment as a sexually dangerous person under federal law, 18 U.S.C. § 4248. She opined that Fagan has engaged in sexually violent conduct or child molestation on numerous occasions, including sexual offenses he committed against numerous young girls ranging in age from 12 to 16 from 1989 to 1991 and the sexual offense he committed against an 8-year old girl in 2002. (Ex. 5).

[2] At the time of this evaluation, Fagan was serving a federal sentence in BOP custody. Florida did not commence civil commitment proceedings against Fagan.

Dr. Parker also opined that Fagan suffers from the following serious mental illnesses, abnormalities or disorders: Other Specified Paraphilic Disorder, Nonconsent, in remission in a controlled environment; Antisocial Personality Disorder; Alcohol Use Disorder, moderate, in sustained remission in a controlled environment; Cocaine Use Disorder, moderate, in sustained remission in a controlled environment; Cannabis Use Disorder, mild, in sustained remission in a controlled environment. Dr. Parker detailed the criteria for these disorders and the basis for her opinion that Fagan currently suffers from such disorders.

Dr. Parker explained that Fagan meets criteria for a diagnosis of Other Specified Paraphilic Disorder, Nonconsent based on the evidence that he has had recurrent, intense, deviant sexually arousing fantasies, sexual urges, or behaviors that have occurred over a period of at least 6 months, which has caused marked distress in important areas of his functioning. She explained that Fagan's sexual behavior has been directed at persons who did not want to have sex with him, and that such behaviors have caused marked distress in his functioning by causing him to incur multiple legal sanctions.

Dr. Parker opined that as a result of Fagan's disorders, he would have serious difficulty refraining from sexually violent conduct or child molestation if released. In formulating her

opinion, Dr. Parker considered Fagan's risk of sexual re-offense using actuarial tools and dynamic risk and needs assessments. Dr. Parker used the STATIC99-R actuarial tool to consider Fagan's static risk factors as compared to other similarly situated sex offenders. Dr. Parker scored Fagan an "8" on the STATIC99-R, which falls in the "high" risk category for sexual re-offense. Fagan's score falls into the 98.5 percentile, meaning that 98.5 percent of sex offenders in the study samples scored below Fagan's scores, 1.2 percent scored the same as Fagan, and .3% scored above Fagan.

Dr. Parker assessed Fagan for the presence of psychopathy using the PCL-R. Fagan scored a 28, which Dr. Parker opined is a high match to the prototypic psychopath. Dr. Parker explained that, for risk assessment purposes, Fagan's PCL-R results show that Fagan is charming, manipulative and glib, and can easily meet others. The results also suggest that he is not currently empathetic and lacks honesty with himself and others.

Dr. Parker explained that Fagan's psychosocial, relationship, sexual criminal and substance abuse history are aggravating factors when considering his risk for sexual re-offense if released. She also opined that his poor adjustment in the community is an aggravating risk factor and noted that he did not have an adequate release plan.

Dr. Parker noted that in addition to his sexual offenses, Fagan had acted violently toward friends, girlfriends, and law enforcement. She noted his pattern of placing his victims in precarious positions while he attempted to engage in sexual acts with them (e.g., taking them into ocean water over their head; restraining their arms; taking their clothes). Dr. Parker found significant that despite having already been charged in 1990 with committing numerous sex offenses, Fagan again in 1991 and 2002, sexually assaulted other girls. Dr. Parker opined that these facts, over all of the actuarial data or other factors, supports her opinion that Fagan lacks volitional control to an extent that he has difficulty in refraining from sexually violent conduct. Dr. Parker opined that Fagan, due to his disorders, will have serious difficulty refraining from sexually violent conduct or child molestation if released.

Dr. Parker opined that civil commitment for treatment is the only reasonable option to keep the community safe and allow Fagan to make address his behavioral issues and risk factors.

H. Forensic Evaluation by Dr. Joseph Plaud

Dr. Plaud is a psychologist that specializes in forensic psychological services. He conducted an evaluation of Fagan in this case at the request of Fagan's counsel. He interviewed Fagan on October 27, 2015 as part of his evaluation. His completed report is at Respondent's exhibit 1.

Dr. Plaud opined that Fagan has previously engaged in child molestation/sexually violent conduct. Dr. Plaud opined that Fagan does not have a diagnosable sexual condition, personality disorder, or any relevant mental disorder. Dr. Plaid's report contained no discussion as to if he considered whether Fagan meets criteria for a diagnosis of Other Specified Paraphilic Disorder (non-consent), as diagnosed by Dr. Graney and Dr. Parker.

Dr. Plaud scored Fagan with an 8 on the Static 99R. Dr. Plaud opined that Fagan would not have serious difficulty refraining from sexually violent conduct or child molestation if released from a secure facility. (Resp. Ex. 1, Bates 2).

I. Forensic Evaluation by Dr. Dianne Lytton

Dr. Lytton, a psychologist, is the Court's-appointed examiner in this case. Her forensic report is at Respondent's exhibit 3. She interviewed Fagan as part of her evaluation on October 13, 2015. Her clinical impression from the interview was that Fagan lacks serious mental disorders. (Resp. Ex. 3, Bates 2322).

Dr. Lytton reported that during the interview, Fagan "initially denied that the events were non-consensual sexual assaults." After Dr. Lytton explained how an encounter can be non-consensual, "[h]e immediately confirmed that some of the events were non-consensual." (Resp. Ex. 3, Bates 2327).

Like Dr. Plaud, Dr. Lytton opined that Respondent has engaged in sexually violent conduct or child molestation, but does not suffer from a serious mental illness, abnormality or disorder, and will not have serious difficulty refraining if released.

## III. CONCLUSIONS OF LAW

Petitioner seeks the commitment of Fagan pursuant to 18 U.S.C. § 4248. For the Court to issue an order committing Fagan to the custody of the Attorney General under § 4248, Petitioner is required to establish by clear and convincing evidence that Fagan is sexually dangerous. A person is sexually dangerous if he "has engaged or attempted to engage in sexually violent conduct or child molestation and . . . is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). To determine that a person is sexually dangerous to others, a court must find that he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." Id. §4247(a)(6); see also United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012).

"[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as

evidence that proves the facts at issue to be highly probable." Jiminez v. Daimler Chrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations and alterations omitted.)

In reaching the Court's decision, the Court considers many factors, including Fagan's offense history and treatment response. United States v. Wooden, 693 F.3d 440, 462 (4th Cir. 2012). Although the Court draws on the examiners and experts' psychological findings in reaching its conclusions, the science of psychology informs the Court's decision, but does not determine the Court's ultimate legal conclusions. Kansas v. Crane, 534 U.S. 407, 413 (2002). In reaching the Court's ultimate legal conclusions, the Court is not limited to definitions used by psychological clinicians. United States v. Caporale, 701 F.3d 128, 137 (4th Cir. 2012).

The Court has considered all the evidence, including the testimony of the expert witnesses. For the reasons set forth below, the Court finds that the Government has met its burden, and orders Fagan committed to the custody of the Attorney General.

A. Fagan Has Engaged in or Attempted to Engage in Sexually Violent Conduct and Child Molestation.

The Government has established by clear and convincing evidence that Fagan has engaged in, or attempted to engage in,

sexually violent conduct and child molestation, as demonstrated by Fagan's sexual assaults in 1990, 1991, and 2002.

B. Fagan Is "Sexually Dangerous" to Others.

The Government has established by clear and convincing evidence that Fagan suffers from the following serious mental illnesses, abnormalities or disorders: Other Specified Paraphilic Disorder (non-consent), Anti-social Personality Disorder (with psychopathic traits), Cocaine Use Disorder, and Alcohol Use Disorder.

For the following reasons and the reasons offered by Dr. Graney and Dr. Parker, the Court finds that Fagan suffers from Other Specified Paraphilic Disorder (non-consent) based, in part, on his persistent and repeated sexual behaviors against non-consenting victims. The Court finds significant the consistency of the victims' reports that he often continued his sexual advances and assaults, despite the victims' resistance, fighting back, crying, and/or pleas for him to stop. On several occasions, Fagan only stopped his behavior after he finished his assault or when other people were likely to witness his conduct. In several cases, Fagan committed sexual assaults by holding down or otherwise controlling his victims arms and/or legs. This evidence, along with the record evidence that Fagan ejaculated on some of his victims after they asked him to stop or tried to

stop him, supports the Court's finding that Fagan is sexually aroused to the victim's non-consent.

The Court finds that Fagan meets criteria for Antisocial Personality Disorder, with psychopathic traits, based on the record evidence which shows his failure to conform to social norms with respect to lawful behavior; his deceitfulness, especially with regard to his sexual offending; his aggressiveness toward others; his impulsivity and failure to plan ahead, as shown by his repeated arrests, chronic substance abuse, and relatively unstable employment; his reckless disregard for the safety of others; and his lack of remorse, as demonstrated by his repeated assaultive behaviors with minimal acceptance of responsibility. His use of drugs at an early age, his attendance at, and running away from, a camp for troubled youth, and his high scores on the PCL-R, add further support for this diagnosis.

Second, the Government has established by clear and convincing evidence that, as a result of these serious mental illnesses, abnormalities, or disorders, Fagan would have "serious difficulty in refraining from sexually violent conduct or child molestation if released."

Petitioner must show that Fagan's difficulty in refraining will be "serious," but it need not establish that Fagan will, or is likely to, reoffend. See United States v. Hunt, 643 F. Supp. 2d 161, 179-81 (D. Mass. 2009). Instead, the analysis focuses on

Fagan's volitional control understood in relation to his mental illness. See United States v. Carta, Civil No. 07-12064-PBS, 2011 WL 2680734, *22 (D. Mass. July 7, 2011). This determination requires more than relying on recidivism rates of past offenders, but requires analysis of a range of different factors, including Fagan's history before incarceration, his time in prison, and the opinions of experts. Id.

In its analysis of potential future risk, the Court has considered more than just whether Fagan exhibits traits shared by other recidivists. The Court evaluates Fagan's present mental condition and the likely prospective effect of the condition on Fagan's volitional control. See Wooden, 693 F.3d at 460. To do so, the Court has taken into account Fagan's failures on supervision; repeated sexual offending after having faced consequences and under circumstances where likely to get caught, lack of sex offender treatment; cognitive distortions; actuarial risk assessments; impulsiveness; lack of volitional control, and historical offenses, both sexual and non-sexual. See id., at 458, 462.

Fagan's serious mental illnesses, abnormalities or disorders have led him to engage in past acts of sexually violent conduct and child molestation. Moreover, as shown by his acts of sexual offending and drug use after having been subject to intense scrutiny as a suspect or person of interest

in the 1990 murder and rape of a young girl, Fagan lacks the ability to appropriately manage his mental illnesses.

The evidence in this case, including the testimony of Fagan, Dr. Graney and Dr. Parker, supports the Court's conclusion that Fagan would have "serious difficulty in refraining from sexually violent conduct or child molestation if released."

The Court finds that the opinions of Drs. Parker and Graney that Fagan would have serious difficulty in refraining from sexually violent conduct or child molestation if released, are thorough, well-reasoned, and supported by the record. Therefore, the Court agrees with their opinions.

The Court concludes that the Government has shown by clear and convincing evidence that Fagan has engaged in sexually violent conduct or child molestation, currently suffers from a serious mental illness, abnormality, or disorder, as a result of which will cause him to have serious difficulty in refraining from sexually violent conduct or child molestation if released.

Fagan is hereby committed to the custody of the Attorney General under the Adam Walsh Act until his condition is such that he would no longer be sexually dangerous to others.

Respectfully submitted, this 25th day of April, 2016.

JOHN STUART BRUCE
Acting United States Attorney

By: /s/ Michael Lockridge
Michael Lockridge
Special Assistant U.S. Attorney
Attorney for Petitioner
U.S. Attorney's Office
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 575-3900 x5093
Facsimile: (919) 856-4821
michael.lockridge@usdoj.gov
NC Bar No. 28644

CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served upon Joseph Craven, counsel for Respondent, by electronically filing the foregoing with the Clerk of Court this 25th day of April 2016, using the CM/ECF system which will send notification of such filing.

By: /s/ Michael Lockridge

Michael Lockridge
Special Assistant U.S. Attorney
Attorney for Petitioner
U.S. Attorney's Office
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 575-3900 x5093
Facsimile: (919) 856-4821
michael.lockridge@usdoj.gov
NC Bar No. 28644