UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-HC-2198-D

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM FAGAN | RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW |

The Respondent, William Fagan, by and through undersigned counsel, respectfully requests that the Court enter the following findings of fact and conclusions of law in this matter, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

On August 31, 2015, Petitioner United States of America ("the government") initiated this proceeding seeking to have Respondent William Fagan ("Respondent" or Mr. Fagan) civilly committed as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), codified at 18 U.S.C. §§ 4247–4248. [DE 1.] Mr. Fagan completed a 180-month sentence for being a felon in possession of a firearm that expired on September 27, 2015 and he is currently detained at FCI-Butner Medium I awaiting the outcome of this proceeding. *Id.* Pursuant to 18 U.S.C. § 4247(d), the Court conducted an evidentiary hearing on May 2, 2016.

After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, this Court concludes that the Government has failed to establish by clear

and convincing evidence that Respondent is sexually dangerous to others as required by the Act and the Constitution.

## II. FACTUAL BACKGROUND

### A. Personal History[1]

Mr. Fagan, who currently is 43 years old, was born in Phoenix, Arizona to an unwed high school senior who was the daughter of an Air Force Major serving at Luke Air Force Base. Mr. Fagan was adopted shortly after birth by Laura and William Fagan, who were working for Citibank in Indonesia. Following his birth, the family returned to Indonesia, where Mr. Fagan was raised with his five siblings, all of whom also had been adopted.

Mr. Fagan lived in Indonesia until he was four years old, when his parents separated, and he moved to Seattle, Washington, with his adoptive father and brother, Shawn. His adoptive father remarried four more times during Mr. Fagan's childhood, ultimately relocating the family to Florida by the time Mr. Fagan was in middle school. In 1989, Mr. Fagan became the primary suspect in the murder of a high school student named Rachel. The police followed and investigated him heavily although he was never charged with the crime. This incident caused Mr. Fagan significant social difficulty and ostracization, although he subsequently was removed from the list of suspects.

His educational history revealed that Mr. Fagan left the Benjamin School in North Palm Beach, Florida, in the seventh grade and attended the Eckerd Wilderness Program for troubled youth for his eighth grade year. He attended Kings Academy in West Palm Beach in ninth grade,

[1] The personal history information is taken from Respondent's Exhibit 1, pages 3–5 and Respondent's Exhibit 3, pages 2321–26.

but left after being reprimanded for drinking in school. In tenth grade, he attended Jupiter High School for a brief time, but following the investigation of the Rachel murder, he transferred to Palm Beach Gardens High School. He left that school in March 1991, and obtained his General Equivalency Diploma in December of the same year. Mr. Fagan then attended DeKalb Community College in Atlanta, Georgia, for six months before returning to Florida.

Mr. Fagan worked in restaurants as a juvenile and as a telephone solicitor, salesman, and advertising sales executive from 1993 to 2002. His most recent period of employment was from April 2002 to July 2002, during which he worked as a regional business developer selling mass advertising in Delray Beach, Florida.

Mr. Fagan's medical history revealed arrhythmia, cardiac dysrhythmia, syncope, axillary lipoma, presbyopia, and chronic Herpes zoster. He takes aspirin on a daily basis. He also has chronic Hepatitis C, although he stated during clinical interviews that he does not have Hepatitis. His only hospitalizations were for alcohol intoxication and in 2012 when he fell outdoors.

Mr. Fagan's mental health history revealed that he was court-ordered to attend counseling when he was 15 years old as part of a juvenile probationary sentence. Mr. Fagan also recalled receiving therapy regarding the Rachel murder and when it was thought that he overdosed at school.

Mr. Fagan's substance abuse history begins at a young age. He first consumed alcohol at age eight, with his heaviest uses being from age 16 to 18. He overdosed on alcohol at age 16, resulting in a hospitalization. He also abused marijuana from age 13 to 18, and LSD and ecstasy beginning at age 17 until his arrest in 2002. He also used cocaine starting at age 17 and sedatives starting at age 27 until his arrest in 2002. Mr. Fagan also used heroin once at age 29. He attended the Palm Beach County Sheriff's Office Drug Farm, an in-custody substance abuse treatment

program for an 18-month period beginning in 1995. Mr. Fagan noted that the "drug farm saved [his] life." In 2007, while in BOP custody, he completed a 40-hour drug education program, and in 2008, he participated in some non-residential drug treatment programs.

Mr. Fagan denied past or current interests in sexually deviant behaviors, has absolutely no history of sexual misconduct in prison, and denies being the victim of sexual abuse.

**B. Criminal and Sexual Offense History**[2]

*Sexual Offenses*

Mr. Fagan has two convictions in adult court for sex-related offenses, both of which were sustained in the Florida state court system. On August 5, 1991, at age 18, he was arrested for sexually assaulting at 16-year old girl. Mr. Fagan had a blood alcohol level of .27 at the time of arrest. He was initially charged with First Degree Sexual Battery, but after witnesses change their accounts of the event, the charge was changed to Second Degree Sexual Battery. Mr. Fagan ultimately pled no contest to Battery, lesser included of Sexual Battery, in February 1992, and received a sentence of 30 days probation.

On June 19, 2003, Mr. Fagan was arrested for Sexual Battery on Person Less than 12 Years and False Imprisonment. He was arrested while in federal custody serving his sentence on the § 922(g)(1) charge. On August 12, 2002, Mr. Fagan was babysitting two siblings, M.P. (8-year-old female) and T.P. (6-year-old male). While playing "Cops and Robbers" with the children, Mr. Fagan tied T.P.'s feet and hands together with a belt and speaker wire. Mr. Fagan also sprayed shaving cream on M.P.. On May 13, 2005, the charges were amended to Sexual

---

[2]The information in this section is taken from Respondent's federal Presentence Report, which is Petitioner's Exhibit 20 and from Petitioner's Exhibit 1.

Battery on Person Less than 12 Years, False Imprisonment, and Lewd or Lascivious Molestation. On June 28, 2005, Mr. Fagan pled guilty to Battery of a Child and False Imprisonment. He was sentenced to five years in state custody on the Battery of a Child charge and 366 days in state custody on the False Imprisonment charge to run concurrently. The state sentences were to run concurrently with the federal sentence Mr. Fagan was then serving.

*Juvenile Criminal Offenses*

Mr. Fagan's record includes 14 offenses that did not result in adult convictions. All of these offenses allegedly took place between January 1989 and April 1990, when Mr. Fagan was roughly 16 years old. The majority of these offenses were not originally reported to police, rather they were discovered when law enforcement went to local schools asking questions about the respondent regarding the Rachel investigation. They all were Nolle Prossed on the same day, September 7, 1990, which was roughly four months after they were charged. All of these cases involved allegations that Mr. Fagan victimized a teenager. The allegations all are similar in nature. In some cases, Mr. Fagan was alleged to have accosted young females at the beach, removed their bathing suit tops and fondled their breasts. In other cases, he was alleged to have put his hands down girls' pants and digitally penetrated their vaginas with in a car. In others, he was alleged to have forced himself on the girls and removed their clothes despite their requests for him to stop. Two cases involved Mr. Fagan allegedly entering the home of a young girl through the window. In one case, Mr. Fagan allegedly tied up a teenaged boy and sodomized him with a pinecone. All of the alleged victims were people who were known to Mr. Fagan at the time.

After being Nolle Prossed, four of the cases were charged in juvenile court. In each of those four cases, Mr. Fagan was charged with Indecent Exposure, to which he pled no contest. Mr. Fagan was adjudicated delinquent, and he received a sentence of community control and counseling until his 19th birthday. In each of the remaining 10 cases, no further action was taken after the cases were Nolle Prossed.

*Adult Criminal Offenses*

All of Mr. Fagan's adult criminal offenses took place in the Florida state courts, save the instant offense. On August 5, 1991, as part of the incident that led to Mr. Fagan's 1991 Battery conviction discussed above, he also was charged with Disorderly Conduct and two counts of Battery on a Police Officer. Police found Mr. Fagan drunk in public. He threatened paramedics, kicked an officer, and attempted to hit another officer. His blood alcohol content was .27. In February 1992, Mr. Fagan pled guilty to Battery on an Officer and received a sentence of 3 years probation. In July 1992, his probation was modified to require six months of community control as a result of a positive drug test and traffic violations. In December 1993, his probation was revoked following his arrest for sale of cocaine.

On August 6, 1993, Mr. Fagan was arrested and charged with three counts of Sale of Cocaine and Conspiracy. In December 1993, he pled guilty to all charges. On one count of Sale of Cocaine, he received a sentence of 364 days in jail with credit for time served, and on the remaining charges, he was placed under community control. He was released in June 1994, and his community control was revoked in January 1995. He received a sentence of 5 years probation. In October 1997, his probation was revoked and he received a sentence of 3 years in prison.

Mr. Fagan also has convictions for No Valid Driver's License, Driving While Intoxicated, and Reckless Driving. On February 24, 2003, Mr. Fagan was charged with the instant federal offense, possessing a firearm after sustaining a felony conviction, which occurred in August 2002. His three Florida Sale of Cocaine convictions qualified him as an Armed Career Criminal, and he received a sentence of 180 months' imprisonment in federal prison followed by three years of supervised release. Mr. Fagan's criminal sentence expired on September 25, 2015. When released, Mr. Fagan will commence a three-year term of federal supervised release.

## III. DISCUSSION

The Adam Walsh Act provides for the civil commitment of "sexually dangerous person[s]." 18 U.S.C. § 4248. Under 18 U.S.C. § 4247(a)(5), a "sexually dangerous person" is one "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." A person is "sexually dangerous to others" if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6).

Under the Adam Walsh Act, the government has the burden of proving that Mr. Fagan is sexually dangerous by clear and convincing evidence. 18 U.S.C. § 4248(d). "The clear and convincing evidence standard is an 'intermediate standard,' lying somewhere 'between preponderance of the evidence and proof beyond a reasonable doubt.'" *United States v. Hunt*, 643 F. Supp. 2d 161, 179 (D. Mass. 2009) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). The government must produce "'[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" *Id.* (alteration in original) (quoting BLACK'S LAW

DICTIONARY 596 (8th ed. 2004)).

Thus, in order to prove that Mr. Fagan is a "sexually dangerous person," the government must prove three elements by clear and convincing evidence: (1) that Mr. Fagan engaged in or attempted to engage in sexually violent conduct or child molestation; (2) that Mr. Fagan suffers from a serious mental illness, abnormality, or disorder; and (3) that, as a result of the serious mental illness, abnormality, or disorder, Mr. Fagan would have serious difficulty in refraining from sexually violent conduct or child molestation if he were to be released. *See* 18 U.S.C. § 4247(a)(5)–(6); 18 U.S.C. § 4248.

Four experts testified at the evidentiary hearing. Joseph Plaud, Ph.D., and Diane Lytton, Ph.D., testified that Mr. Fagan did not meet criteria for commitment under the Adam Walsh Act. Karen Parker, Ph.D., and Dawn Graney, Psy.D., testified that Mr. Fagan did meet criteria for commitment under the Adam Walsh Act. Mr. Fagan was also called as a witness during the government's case-in-chief.

**A. Past Violent Sexual Conduct or Child Molestation**

The Court finds that the first criterion for commitment under the Adam Walsh Act, that Mr. Fagan has "engaged or attempted to engage in sexually violent conduct or child molestation" in the past, is satisfied. 18 U.S.C. § 4247(a)(5). All of the experts agree that Mr. Fagan engaged in sexually dangerous behavior in the past by virtue of his past convictions, and Mr. Fagan does not dispute that the government has proven the first element.

**B. Serious Mental Illness, Abnormality, or Disorder**

To meet its burden of establishing that Mr. Fagan is "sexually dangerous to others," the government must also prove that he "suffers from a serious mental illness, abnormality, or

disorder." 18 U.S.C. § 4247(a)(6). Drs. Parker and Graney conclude that Mr. Fagan suffers from Otherwise Specified Paraphilic Disorder, Nonconsent and that this qualifies as a "serious mental illness, abnormality, or disorder" as required by the statute. (Pet'r Ex. 5 at 2362, Pet'r Ex. 2 at 1111.) Both Drs. Parker and Graney offered additional diagnoses of Antisocial Personality Disorder, Cocaine Use Disorder, and Alcohol Use Disorder. Pet'r Ex. 5 at 2362; Pet'r Ex. 2 at 1111.) Dr. Parker offered an additional diagnosis of Cannabis Use Disorder. (Pet'r Ex. 5 at 2362.) Both respondent's expert, Dr. Plaud, and the court-appointed expert, Dr. Lytton, conclude that Mr. Fagan currently is not diagnosable with a sexual condition or a personality disorder. (Resp. Ex. 1 at 2; Resp. Ex. 3 at 2337.) On this point, the Court credits the testimony of Dr. Plaud and Dr. Lytton.

Eight paraphilic disorders are listed in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM-V): voyeuristic disorder, exhibitionistic disorder, frotteuristic disorder, sexual masochism disorder, sexual sadism disorder, pedophilic disorder, fetishistic disorder, transvestic disorder, and "catch-all" categories referred to as "unspecified" and "other specified" paraphilic disorders. DSM-V, p.685–705. A paraphilic disorder is "a paraphilia that is currently causing distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others." *Id*. at 686. In order to diagnose paraphilic disorder, there must be evidence of recurrent, intense sexually arousing fantasies, sexual urges, or behaviors that have occurred over a period of at least 6 months, and have caused marked distress in social, occupational, or other important areas of functioning. *Id*. at 686.

Illegal sexual behavior with teenagers is not a paraphilia or paraphilic disorder listed in the DSM-V. While the DSM-V points out, that "[t]he eight listed disorders do not exhaust the

list of possible paraphilic disorders," the Court finds persuasive the fact that paraphilic coercive disorder was proposed as a mental disorder for persons who engage in non-consensual sex with underage persons during the revision of the DSM-IV-TR, but it ultimately was not included in the DSM-V. *Id.* at 686.

The Court finds as a fact that Mr. Fagan does not meet the criteria for a diagnosis of paraphilic disorder. The Court also credits the testimony of Drs. Lytton and Plaud on this point. Mr. Fagan's sexual offenses against adolescents were criminal, but were not acts of sexual deviance. Moreover, the last example of such a nonconsenting act was in 1991, when Mr. Fagan was 18 years old. Even if the Court were to find that Other Specified Paraphilic Disorder, Nonconsent were a viable diagnosis, the Court finds that the 14 sexual offenses reported in May 1990 do not convincingly demonstrate that Mr. Fagan was experiencing recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors regarding nonconsent. Moreover, there is no current evidence of recurrent, intense sexually arousing fantasies, sexual urges, or behaviors regarding nonconsent that have occurred over a period of at least 6 months.

Because Mr. Fagan was convicted of a sexual offense against a child, the Court also addresses a possible diagnosis of Pedophilic Disorder. However, no expert diagnoses Mr. Fagan with Pedophilic Disorder. The Court credits Dr. Lytton's opinion that a one-time sexual offense against a child does not meet the criteria for the diagnosis. It is clear that the government has not offered convincing evidence that Mr. Fagan currently exhibits signs or behaviors associated with Pedophilic Disorder.

Drs. Parker and Graney also diagnose Mr. Fagan with Antisocial Personality Disorder. For such a diagnosis, the DSM-V requires:

A. A pervasive pattern of disregard for and violation of the rights of others, occurring since age 15 years, as indicated by three (or more) of the following:

1) Failure to conform to social norms with respect to lawful behaviors, as indicated by repeatedly performing acts that are grounds for arrest.
2) Deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure.
3) Impulsivity or failure to plan ahead.
4) Irritability and aggressiveness, as indicated by repeated physical fights or assaults.
5) Reckless disregard for safety of self or others.
6) Consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations.
7) Lack of remorse, as indicated by being indifferent to or rationalized having hurt, mistreated, or stolen from another."

DSM-5, § 301.7. While the Court finds that Mr. Fagan may have met criteria for a diagnosis of Antisocial Personality Disorder at some point in his younger life, the government has not convincingly proven that he currently meets the criteria for such a diagnosis. The Court recognizes that Mr. Fagan has been in prison for the past 15 years, however there is no evidence that he has pervasively violated institutional rules, that he has engaged in deceitful behavior, or that he has ongoing issues with impulsivity. The government has not presented evidence of pervasive aggression or irritability or irresponsibility. Instead, Mr. Fagan's testimony, which the Court credits, demonstrates that he has taken a considerable amount of programming while in the BOP and has taken steps to formulate a release plan. He has engaged in mentoring and leadership roles while in the BOP. He appeared remorseful about the teenage girls. Nevertheless, he denies committing a sex offense against any of these girls. There is no current evidence of Antisocial Personality Disorder in the record from which the Court can conclude that the government has met its burden of proving that Mr. Fagan currently meets criteria for said diagnosis.

In sum, the Court finds that the government has not proven by clear and convincing evidence that Mr. Fagan can be diagnosed with a serious mental illness, abnormality, or disorder under the Adam Walsh Act.

**C. Serious Difficulty Refraining**

Notwithstanding the Court's determination that the government failed to meet its burden under the second prong of the Adam Walsh Act, the Court proceeds to analyze the government's evidence as to the third prong of the Adam Walsh Act. To meet its burden of establishing that Mr. Fagan is "sexually dangerous to others," the government must also prove that Mr. Fagan, if released, "would have serious difficulty in refraining from sexually violent conduct or child molestation" as a result of his serious mental illness, abnormality, or disorder. 18 U.S.C. § 4247(a)(6). The determination under this prong requires the Court to consider Mr. Fagan's volitional control over his actions understood in relation to his mental illness, and it is also informed by the constitutional constraints on the civil commitment scheme. In *Kansas v. Crane*, 534 U.S. 407 (2002), the United States Supreme Court held that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficulty in controlling behavior." *Id.* at 413. The Supreme Court noted that this standard allows courts wide discretion in relying on a number of different factors relevant to sexual dangerousness. The standard does not have "a particularly narrow or technical meaning;" nor is it demonstrable with "mathematical precision." *Id.*

In answering this inquiry, the Court considers the recidivism rates associated with Mr. Fagan's actuarial scores, but affords them less weight than Mr. Fagan's own conduct. The most recent evidence of a sexually violent act was the 2002 incident involving T.P. and M.P, which,

importantly, did not result in a conviction for a sexual offense. While in federal custody, Mr. Fagan has not demonstrated that he has issues with volitional control. He has followed institutional rules and has had no incidents of sexually inappropriate behavior in the last 15 years. There is no evidence that he preyed on or fraternized with female BOP staff, possessed any type of contraband of a sexual nature, or masturbated to thoughts or fantasies involving children or nonconsent. While Drs. Parker and Graney note that Mr. Fagan has a long history of drug and alcohol problems, there is no evidence he has obtained or tried to obtain either drugs or alcohol while in the BOP. Indeed, Drs. Parker and Graney concede that he has exhibited control over his behavior while in the BOP. (Pet'r Ex. 5 at 2361, Pet'r Ex. 2 at 1118.) While in custody, Mr. Fagan completed many hours of programming, consistently held jobs, and was also put in supervisory and mentoring roles. Additionally, Mr. Fagan was also in the community for a continuous period of nearly four years without demonstrating any evidence of an inability to control his behavior.

Similar to their failure to conduct a nuanced evaluation with respect to the second prong, the Court finds that Drs. Parker and Graney fail to consider the total picture and the strong evidence that Mr. Fagan can indeed control his behavior. After the age of 18, there is no evidence that Mr. Fagan sought out nonconsenting victims. There is only one instance in the record of any sexual contact with children. All of these events took place well over 15 years ago. The fact that the prison record is devoid of evidence that Mr. Fagan has difficulty controlling his behavior is impossible to ignore. The record demonstrates that either there is little evidence of either pedophilic or sexually violent behavior or that Mr. Fagan must be exhibiting control over such

behavior. The failure of Drs. Parker and Graney to attribute any weight to the most recent evidence available renders them unpersuasive.

Mr. Fagan's own testimony at the hearing left the Court with the impression that he was credible and sincere. He appeared candid, insightful as to his past, and genuinely determined to refrain from sexually offending in the future, even though he denied some of the behaviors discussed above. He stated that he is neither attracted to children nor non-consenting behavior. Rather, Mr. Fagan stated that he is attracted to healthy, adult, heterosexual relationships. The Court also affords significant weight to the mentoring and leadership roles the BOP gave him while in custody. Furthermore, Mr. Fagan has three years of supervised release to follow his release from federal prison.

As Dr. Plaud noted, "[a]s a younger man Mr. Fagan evidenced many psychological and behavioral difficulties which contributed to his sexual offense history, in context of ongoing and active substance abuse." (Pet'r Ex. 1 at 2). The Court agrees with Dr. Plaud's conclusion, however, that "[o]verall Mr. Fagan is showing good behavioral management skills and emotional integration of his life experiences. Given his history it is noteworthy that Mr. Fagan's attitudes and behavior have been focused on self-improvement, self-control, and accountability for his behavior." *Id.*

"In the absence of clear and convincing proof that a serious mental impairment causes an individual to have serious difficulty in controlling his behavior, the constitution requires reliance on the criminal law, rather than a civil commitment, to deal with that risk." *United States v. Wilkinson*, 646 F. Supp. 2d 194, 209 (D. Mass 2009). As the government has not presented such clear and convincing proof, Mr. Fagan may not be civilly committed.

IV. CONCLUSION

For the foregoing reasons, the government has failed to show by clear and convincing evidence that Mr. Fagan suffers from a serious mental illness, abnormality, or disorder, as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. Accordingly, the Court concludes that Mr. Fagan is not a sexually dangerous person under the Adam Walsh Act and ORDERS that the government release Mr. Fagan forthwith to the custody and supervision of the appropriate United States Probation Officer.

Respectfully submitted on this 26th day of April, 2016.

THOMAS P. MCNAMARA
Federal Public Defender

/s/ Joseph H. Craven
JOSEPH H. CRAVEN
Assistant Federal Public Defender
Attorney for Respondent
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: joseph_craven@fd.org
N.C. State Bar No. 26116
LR 57.1 Counsel, Appointed

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

**G. NORMAN ACKER, III**
**ROBERT F. RAMIREZ**
U.S. Attorney's Office
310 New Bern Ave., Suite 800
Raleigh, NC 27601-1461
Email: norman.acker@usdoj.gov
Email: roberto.ramirez@usdoj.gov

**MICHAEL E. LOCKRIDGE**
Federal Bureau of Prisons, Legal Center
P.O. Box 1600, Old Highway 75
Butner, NC 27509
Email: **mlockridge@bop.gov**

by electronically filing the foregoing with the Clerk of Court on April 26, 2016, using the CM/ECF system which will send notification of such filing to the above.

This the 26th day of April, 2016.

/s/ Joseph H. Craven
JOSEPH H. CRAVEN
Assistant Federal Public Defender
Attorney for Respondent
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: joseph_craven@fd.org
N.C. State Bar No. 26116
LR 57.1 Counsel, Appointed