UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, PETITIONER, | ) | |
| V. | ) | 5:15-HC-2198-D |
| WILLIAM FAGAN, RESPONDENT. | ) | |

ORDER OF THE COURT
MAY 6, 2016
BEFORE THE HONORABLE JAMES C. DEVER III
CHIEF U.S. DISTRICT JUDGE

APPEARANCES:

FOR THE PETITIONER:

MR. MICHAEL E. LOCKRIDGE
MR. JOSH ROYSTER
ASST. U.S. ATTORNEY
310 NEW BERN AVE.
RALEIGH, NC

FOR THE RESPONDENT:

MR. JOSEPH H. CRAVEN
MS. HALERIE MAHAN
ASST. FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

COURT REPORTER: DONNA J. TOMAWSKI
STENOTYPE WITH COMPUTER AIDED TRANSCRIPTION

FRIDAY, MAY 6, 2016

**THE COURT:** GOOD AFTERNOON AND WELCOME TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA. THE COURT WILL ANNOUNCE ITS DECISION IN THE CASE OF *UNITED STATES OF AMERICA V. WILLIAM FAGAN*.

AS I'VE DONE IN ALL OF THESE CASES, I WILL READ ALOUD MY FINDINGS AND CONCLUSIONS AND THEN ENTER A SHORT ORDER INCORPORATING BY REFERENCE MY FINDINGS AND CONCLUSIONS.

THE COURT NOW MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING THE BENCH TRIAL HELD ON MAY 2, 2016.

PETITIONER, THE UNITED STATES OF AMERICA, SEEKS TO CIVILLY COMMIT RESPONDENT, WILLIAM FAGAN, AS A SEXUALLY DANGEROUS PERSON UNDER SECTION 3024 OF THE ADAM WALSH CHILD PROTECTION AND SAFETY ACT OF 2006, CODIFIED IN 18 U.S.C. SECTIONS 4247 AND 4248.

IN ORDER TO CIVILLY COMMIT FAGAN PURSUANT TO SECTIONS 4247 AND 4248, THE GOVERNMENT MUST PROVE BY CLEAR AND CONVINCING EVIDENCE THAT HE IS SEXUALLY DANGEROUS. UNDER THE ADAM WALSH ACT, A PERSON IS SEXUALLY DANGEROUS IF HE HAS ENGAGED OR ATTEMPTED TO ENGAGE IN SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION AND IS SEXUALLY DANGEROUS TO OTHERS. SEE 18 U.S.C. SECTION 4247(A)(5).

TO DETERMINE THAT A PERSON IS SEXUALLY DANGEROUS TO OTHERS, A COURT MUST FIND THAT HE SUFFERS FROM A SERIOUS

MENTAL ILLNESS, ABNORMALITY OR DISORDER AS A RESULT OF WHICH HE WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED. SEE 18 U.S.C. SECTION 4247(A)(6). THUS, IN THIS CASE THE GOVERNMENT MUST PROVE BY CLEAR AND CONVINCING EVIDENCE THAT FAGAN HAS ENGAGED OR ATTEMPTED TO ENGAGE IN SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION; TWO, FAGAN SUFFERS FROM A SERIOUS MENTAL ILLNESS, ABNORMALITY OR DISORDER; AND THREE, THAT AS A RESULT OF THAT SERIOUS MENTAL ILLNESS, ABNORMALITY OR DISORDER, FAGAN WOULD HAVE SERIOUS DIFFICULTY REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION.

FOR A DISCUSSION OF THESE THREE ELEMENTS UNDER THE ADAM WALSH ACT, SEE *UNITED STATES V. PEREZ*, 752 F.3D 398 (4TH CIRCUIT 2014), *UNITED STATES V. ANTOINE*, 742 F.3D 151 (4TH CIRCUIT 2014), *UNITED STATES V. HEYER*, 740 F.3D 284, (4TH CIRCUIT 2014), *UNITED STATES V. WOOD*, 741 F.3D 417, (4TH CIRCUIT 2013), *UNITED STATES V. BOLANDER*, 722 F.3D 199, (4TH CIRCUIT 2013), *UNITED STATES V. SPRINGER*, 715 F.3D 535, (4TH CIRCUIT 2013), *UNITED STATES V. CAPORALE*, 701 F.3D 128, (4TH CIRCUIT 2012), *UNITED STATES V. WOODEN*, 693 F.3D 440, (4TH CIRCUIT 2012). *UNITED STATES V. FRANCES*, 686 F.3D 265, (4TH CIRCUIT 2012), *UNITED STATES V. HALL*, 664 F.3D 456, (4TH CIRCUIT 2012), UNITED STATES V. COMSTOCK, 627 F.3D 513, (4TH CIRCUIT 2010).

SEXUALLY VIOLENT CONDUCT INCLUDES ANY UNLAWFUL CONDUCT OF A SEXUAL NATURE WITH ANOTHER PERSON THAT INVOLVES, AMONG OTHER THINGS, THREATENING OR PLACING THE VICTIM IN FEAR THAT THE VICTIM OR ANOTHER PERSON WILL BE HARMED, SEE 28 CFR 549.92(B).

CHILD MOLESTATION INCLUDES ANY UNLAWFUL CONDUCT OF A SEXUAL NATURE WITH OR SEXUAL EXPLOITATION OF A PERSON UNDER THE AGE OF 18. SEE 28 CFR 549.93.

CLEAR AND CONVINCING EVIDENCE HAS BEEN DEFINED AS EVIDENCE OF SUCH WEIGHT THAT IT PRODUCES IN THE MIND OF THE TRIER OF FACT A FIRM BELIEF OR CONVICTION WITHOUT HESITANCY AS TO THE TRUTH OF THE ALLEGATIONS SOUGHT TO BE ESTABLISHED, AND AS WELL AS EVIDENCE THAT PROVES THE FACTS AT ISSUE TO BE HIGHLY PROBABLE. SEE *PEREZ*, 752 F.3D AT 407. THE CLEAR AND CONVINCING EVIDENCE STANDARD OF PROOF IS AN INTERMEDIATE STANDARD THAT FALLS BETWEEN A MERE PREPONDERANCE OF THE EVIDENCE AND PROOF BEYOND A REASONABLE DOUBT.

ON AUGUST 31, 2015, THE GOVERNMENT FILED A CERTIFICATE OF A SEXUALLY DANGEROUS PERSON AGAINST FAGAN. SEE DOCKET ENTRY ONE, EXHIBIT 6. ON APRIL 19, 2016, THE PARTIES FILED A JOINT PROPOSED PRETRIAL ORDER.

THE COURT HAS CONSIDERED AND REVIEWED ALL THE ADMISSIBLE EXHIBITS PRESENTED AT TRIAL ON MAY 2ND, 2006, AND HAS CONSIDERED ALL THE TESTIMONY PRESENTED AT THE

TRIAL. AT TRIAL, THE GOVERNMENT PRESENTED THE TESTIMONY OF WILLIAM FAGAN, THE TESTIMONY OF FAGAN'S EX-WIFE, MARISSA VASQUEZ, AND THE TESTIMONY OF TWO EXPERT WITNESSES, DR. DAWN GRANEY AND DR. KAREN PARKER. FAGAN PRESENTED THE TESTIMONY OF TWO EXPERT WITNESSES, DR. DIANE LYTTON AND DR. JOSEPH PLAUD.

FAGAN WAS BORN IN ARIZONA IN 1973. HE WAS ADOPTED A FEW DAYS AFTER HIS BIRTH AND HE HAS NUMEROUS SIBLINGS. HIS ADOPTIVE FATHER HAS REMARRIED SEVERAL TIMES SINCE FAGAN'S ADOPTION. FAGAN'S ADOPTIVE FATHER WAS A VERY SUCCESSFUL AND WEALTHY BUSINESS EXECUTIVE. FAGAN HAS NO ONGOING CONTACT WITH HIS ADOPTIVE FATHER BUT DOES CONTINUE TO HAVE A RELATIONSHIP WITH HIS SISTER, BECKY FAGAN, WHO LIVES IN TEXAS AND REMAINS SUPPORTIVE OF FAGAN.

FAGAN RESIDED IN SOUTH FLORIDA DURING HIS TEEN-AGE YEARS. HIS FATHER WAS OFTEN ABSENT DUE TO BUSINESS TRAVEL. IN 1987, AT AGE 14, FAGAN WITHDREW FROM THE SEVENTH GRADE. DURING HIS EIGHTH GRADE YEAR, HE ATTENDED THE ECKERD WILDERNESS YOUTH PROGRAM, A CAMP FOR TROUBLED YOUTH. HE RAN AWAY FROM THE CAMP ON SEVERAL OCCASIONS BUT FAGAN'S NEW STEPMOTHER WOULD HAVE HIM RETURNED TO THE CAMP.

FAGAN ATTENDED KINGS ACADEMY DURING THE NINTH GRADE, HOWEVER SCHOOL OFFICIALS DISCOVERED THAT HE HAD CONSUMED ALCOHOL, IN VIOLATION OF SCHOOL POLICY. HE DIDN'T RETURN

THERE FOR THE TENTH GRADE. HE ATTENDED TENTH GRADE AT PALM BEACH HARDEN HIGH SCHOOL BUT WITHDREW FROM THE SCHOOL IN MARCH -- OR AFTER MARCH 1990, AFTER BECOMING A SUSPECT IN THE MARCH 17, 1990, MURDER AND RAPE OF RACHEL HURLEY. THE POLICE NEVER CHARGED FAGAN IN CONNECTION WITH HURLEY'S RAPE AND UNDERSTAND AND DNA EVIDENCE SUPPOSEDLY EXCLUDED HIM AS A SUSPECT.

FAGAN SUBSEQUENTLY RECEIVED A GENERAL EQUIVALENCY HIGH SCHOOL DIPLOMA.

FAGAN'S SUBSTANCE ABUSE BEGAN WHEN HE WAS IN MIDDLE SCHOOL. HE FIRST CONSUMED ALCOHOL AT AGE EIGHT AND WAS A VERY HEAVY DRINKER BETWEEN THE AGES OF 16 AND 18. FAGAN ALSO REGULARLY SMOKED MARIJUANA DURING THAT PERIOD. AS MENTIONED, HIS FATHER WAS VERY AFFLUENT AND EXERCISED LITTLE PARENTAL CONTROL OVER FAGAN. NUMEROUS OTHER TEEN-AGERS IN THE JUPITER, FLORIDA AREA ALSO SEEMINGLY HAD LITTLE PARENTAL CONTROL AND THE TEENS WOULD OFTEN "PARTY" TOGETHER AT THE BEACH AT PRIVATE RESIDENCES WHEN PARENTS WERE NOT HOME AND AT HOTELS.

FAGAN BEGAN USING COCAINE AT AGE 17 AT USED IT REGULARLY WHEN NOT INCARCERATED UNTIL AGE 29. FAGAN ALSO HAS EXPERIMENTED WITH LSD, ECSTASY, AND HEROIN.

IN DECEMBER OF 1999, FAGAN, THEN AGE 26, MARRIED MARISSA GOLDMAN, THEN AGE 18. FAGAN'S RELATIONSHIP WITH GOLDMAN BEGAN WHEN HE WAS AGE 23 AND SHE WAS AGE 14. THEY

ALMOST IMMEDIATELY BEGAN HAVING SEXUAL RELATIONS AFTER MEETING. MARISSA GOLDMAN BECAME PREGNANT AT AGE 17 AND HAD A SON IN MARCH 2000. WHEN FAGAN LEARNED THAT GOLDMAN WAS PRESENT WITH HIS CHILD, HE MARRIED HER. THEIR SON WAS BORN IN MARCH 2000. FAGAN AND HIS WIFE SEPARATED IN NOVEMBER OF 2000, AND THEY LATER DIVORCED. EACH WAS UNFAITHFUL TO THE OTHER DURING THE MARRIAGE. FAGAN HAS SINCE GIVEN UP HIS PARENTAL RIGHTS TO HIS SON. MARISSA GOLDMAN IS NOW KNOWN AS MARISSA VASQUEZ.

FAGAN'S SEXUAL INTERCOURSE WITH MARISSA GOLDMAN WHEN SHE WAS 14 AND 15 AND HE WAS 23 AND 24, CONSTITUTES CHILD MOLESTATION UNDER THE ADAM WALSH ACT. SEXUAL CONTACT ALSO APPEARS TO HAVE BEEN FELONIOUS BEHAVIOR UNDER FLORIDA LAW GIVEN FLORIDA'S AGE OF CONSENT AND THE AGE DIFFERENCE BETWEEN FAGAN AND MARISSA GOLDMAN.

AS FOR FAGAN'S CRIMINAL HISTORY, IN MAY 1990 CRIMINAL CHARGES WERE BROUGHT AGAINST FAGAN IN FLORIDA STATE COURT FOR NUMEROUS COUNTS OF FELONY LEWD ASSAULT AND RELATED CHARGES BASED ON ALLEGATIONS THAT HE SEXUALLY ASSAULTED NUMEROUS GIRLS RANGING IN AGE FROM 12 TO 16 YEARS OLD BETWEEN JANUARY 1989 AND APRIL 1990, AND AN ALLEGATION OF AN ASSAULT OF A 14 YEAR OLD BOY. SEE PETITIONER EXHIBITS 8 THROUGH 19 AND PETITIONER EXHIBIT 20.

THE NATURE OF THE CHARGED OFFENSES IS DETAILED IN THE RECORD EVIDENCE. SEE ID.

THE ALLEGATIONS LEADING TO THESE CHARGES IN MAY OF 1990, CAME TO LIGHT DURING THE INVESTIGATION SURROUNDING THE MURDER OF RACHEL HURLEY ON MARCH 17, 1990. DURING THE INVESTIGATION, APPROXIMATELY 13 GIRLS INFORMED AUTHORITIES THAT FAGAN HAD SEXUALLY OFFENDED AGAINST THEM. SOME OF THEM WERE FORMER GIRLFRIENDS OF FAGAN; ALL WERE ACQUAINTANCES OF FAGAN.

ESSENTIALLY THE ALLEGATIONS INVOLVED FAGAN, THEN AGE 16 OR 17, ACTING IN A SEXUALLY INAPPROPRIATE AND ASSAULTIVE WAY TOWARD HIS PEERS AND FRIENDS OR ASSOCIATES WHO WERE MIDDLE SCHOOL OR HIGH SCHOOL FEMALES. FOR EXAMPLE, FAGAN ALLEGEDLY WOULD INITIATE SOME FORM OF FRIENDLY CONTACT WITH A FEMALE AT THE BEACH OR AT PARTIES, BUT WOULD THEN PROCEED TO FONDLE THE FEMALE'S BREASTS OVER THE FEMALE'S OBJECTIONS, OR TOUCH THE FEMALE'S BUTTOCKS OR VAGINA OVER THE FEMALE'S OBJECTIONS. SEE PETITIONER'S EXHIBITS 9, 10, 12, 13, 14, 15, 16, 21. SEE RESPONDENT'S EXHIBITS 11 THROUGH 49.

SOME OF THE CONDUCT INVOLVED PENETRATING THE FEMALE WITH HIS FINGER OR PENIS AND SOMETIMES FAGAN EJACULATED. ACCORDING TO THE FEMALES, FAGAN OFTEN WOULD CONTINUE WITH THE SEXUALLY INAPPROPRIATE ASSAULTIVE BEHAVIOR EVEN AFTER THE FEMALE OBJECTED. WITH RESPECT TO SOME OF THE SEXUALLY INAPPROPRIATE AND ASSAULTIVE BEHAVIOR, FAGAN ADMITTED TO DR. LYTTON THAT HE ENGAGED IN A SEXUALLY INAPPROPRIATE WAY

TOWARDS SOME OF THE FEMALES.

ON SEPTEMBER 7, 1990, THE LOCAL COUNTY PROSECUTOR IN FLORIDA NOLLE PROSSED ALL OF THE CHARGES FILED IN MAY 1990. SEE PETITIONER'S EXHIBIT 20, WHICH IS A COPY OF FAGAN'S PSR FROM HIS FEDERAL CONVICTION. AFTER THE LOCAL PROSECUTOR NOLLE PROSSED THE MAY 1990 CHARGES ALLEGING THAT FAGAN SEXUALLY ASSAULTED NUMEROUS GIRLS BETWEEN THE AGES OF 12 TO 16 AND A 14 YEAR OLD BOY, FAGAN WAS CHARGED IN JUVENILE COURT IN 1990 WITH INDECENT EXPOSURE AS TO FOUR OF THE FEMALE VICTIMS. FAGAN PLEADED NO CONTEST TO THE FOUR CHARGES OF INDECENT EXPOSURE AND RECEIVED A SENTENCE OF COMMUNITY CONTROL AND COUNSELING UNTIL HIS 19TH BIRTHDAY. SEE PETITIONER'S EXHIBIT 20, PAGES 11 TO 13 OF THAT PSR.

THE FOUR FEMALE VICTIMS TO WHICH FAGAN PLEADED NO CONTEST TO INDECENT EXPOSURE WERE SE, SEE PETITIONER EXHIBITS 5, 9, 15, 17 AND 20; AW, SEE PETITIONER'S EXHIBITS 9, 17, AND 20; JG, SEE PETITIONER'S EXHIBITS 5, 8, 9 AND 20; AND JG, SEE PETITIONER'S EXHIBITS 5, 8, 9 AND 20.

FAGAN'S CONDUCT TOWARD THESE FOUR VICTIMS WERE SEXUALLY VIOLENT UNDER THE ADAM WALSH ACT. AS FOR THE BALANCE OF THE ALLEGATIONS AGAINST FAGAN ARISING IN 1989 AND 1990, IN THE AFTERMATH OF THE RACHEL HURLEY MURDER, THE ALLEGATIONS ARE VIGOROUSLY CONTESTED AND WERE NOLLE

PROSSED. THE GOVERNMENT HAS NOT PROVEN IN THIS CASE BY CLEAR AND CONVINCING EVIDENCE THAT THESE OTHER ALLEGATIONS ARE SEXUALLY VIOLENT CONDUCT UNDER THE ADAM WALSH ACT.

ON AUGUST 5, 1991, FAGAN WAS ARRESTED FOR SEXUAL BATTERY OF SN, A 16 YEAR OLD FEMALE FRIEND, DISORDERLY INTOXICATION AND TWO COUNTS OF BATTERY ON A POLICE OFFICER. SN REPORTED TO AUTHORITIES THAT DURING A PARTY AT A HOTEL, FAGAN BECAME UPSET AND DISRUPTIVE. SN FOLLOWED HIM OUTSIDE THE HOTEL IN AN ATTEMPT TO CALM HIM DOWN. AFTER THEY WERE ALONE NEAR A DUMPSTER, FAGAN FORCED SN TO THE GROUND, REMOVED HER CLOTHING AND FORCED SEXUAL INTERCOURSE UPON HER. SHE REPEATEDLY TOLD HIM TO GET OFF HER AND THAT HE WAS HURTING HER. SOME FRIENDS SAW SN STRUGGLING AGAINST FAGAN AND THEY SUMMONED HELP FROM OTHERS IN THE GROUP. SEE PETITIONER'S EXHIBITS 18 AND 20. FAGAN'S CONDUCT TOWARDS SN WAS SEXUALLY VIOLENT CONDUCT UNDER THE ADAM WALSH ACT.

FAGAN THEN FLED THE SCENE OF THE SEXUAL ASSAULT. PARAMEDICS AND POLICE ARRIVED AT THE SCENE WHERE FAGAN WAS LOCATED. HE KICKED A POLICE OFFICER AND TRIED TO HIT ANOTHER. FAGAN ADMITTED TO BEING UNDER THE INFLUENCE OF COCAINE AND HE HAD A BLOOD ALCOHOL CONCENTRATION OF .27. DURING QUESTIONING BY POLICE, FAGAN GUESSED THAT HE HAD SEXUALLY ASSAULTED SN BUT HAS CLAIMED THAT HE HAS NO MEMORY OF THE INCIDENT. SEE PETITIONER EXHIBITS 18 AND

20.

ON FEBRUARY 18, 1992, FAGAN PLEADED GUILTY TO ONE COUNT OF BATTERY ON A POLICE OFFICER AND NOLO CONTENDERE TO MISDEMEANOR BATTERY, LESSER INCLUDED OFFENSE OF SEXUAL BATTERY AGAINST SN. HE RECEIVED THREE YEARS OF PROBATION. SEE PETITIONER EXHIBIT 18 AND 20.

IN AUGUST OF 1993, FAGAN WAS ARRESTED IN FLORIDA ON FELONY COCAINE CHARGES. SEE PETITIONER EXHIBIT 20.

ON DECEMBER 17, 1993, HE PLEADED GUILTY TO THREE COUNTS OF SALE OF COCAINE AND ONE COUNT OF CONSPIRACY TO SELL COCAINE. SEE PETITIONER EXHIBIT 20. HE RECEIVED A 364-DAY JAIL SENTENCE FOLLOWED BY COMMUNITY CONTROL.

ON JUNE 5, 1994, HE WAS RELEASED FROM CUSTODY. IN JANUARY OF 1995, HIS COMMUNITY CONTROL WAS REVOKED AND HE WAS PLACED ON FIVE YEARS OF PROBATION.

IN OCTOBER OF 1997, HIS PROBATION WAS REVOKED FROM LEAVING FROM HIS APPROVED RESIDENCE AND FOR DRIVING UNDER THE INFLUENCE. HE WAS SENTENCED TO THREE YEARS OF CUSTODY. SEE PETITIONER EXHIBIT 20. HIS PROBATION FOR HIS 1991 CONVICTION WAS REVOKED AND HE WAS SENTENCED TO 364-DAYS IN JAIL WITH CREDIT FOR TIME SERVED. SEE PETITIONER EXHIBIT 20.

ON FEBRUARY 24, 2003, FAGAN WAS FOUND GUILTY IN FEDERAL COURT OF BEING A FELON IN POSSESSION OF A FIREARM AND SENTENCED TO 180-MONTHS IMPRISONMENT, TO BE FOLLOWED

BY THREE YEARS OF SUPERVISED RELEASE. SEE PETITIONER EXHIBIT 21. FAGAN'S PROJECTED RELEASE DATE FROM THIS SENTENCE WAS SEPTEMBER 27, 2015. SEE PETITIONER EXHIBIT 6.

IN JUNE OF 2003, FAGAN WAS CHARGED IN STATE COURT IN FLORIDA WITH SEXUAL BATTERY ON A PERSON LESS THAN 12 YEARS OLD AND FALSE IMPRISONMENT FOR OFFENSE BEHAVIOR THAT HE ENGAGED IN ON AUGUST 12, 2002, WHILE BABYSITTING MP, AN EIGHT YEAR OLD GIRL AND TP, HER SIX YEAR OLD BROTHER. MP AND TP WERE THE CHILDREN OF FAGAN'S FRIEND, THOMAS PEACOCK. FAGAN REGULARLY "PARTIED" WITH THOMAS PEACOCK AND HIS WIFE. HE ALSO SOMETIMES STAYED AT THEIR HOUSE.

ON AUGUST 12, 2002, THOMAS PEACOCK HAD TO DRIVE HIS WIFE TO WORK. FAGAN BABYSAT MP AND TP. WHILE BABYSITTING, FAGAN PLAYED COPS AND ROBBERS WITH THE CHILDREN. AT SOME POINT FAGAN TIED THE BOY'S HAND AND FEET IN A HOG TIE STYLE AND LEFT HIM ON HIS BED. FAGAN THEN PLAYED WITH THE EIGHT YEAR OLD GIRL. SHE SPRAYED HIM WITH SHAVING CREAM. FAGAN GOT THE SHAVING CREAM FROM THE CHILD AND CARRIED HER INTO THE BEDROOM. HE LAID HER ON THE BED. WHILE HOLDING HER DOWN, TOOK OFF HER SHIRT AND SHORTS AND UNDERWEAR. WHILE LYING DOWN, HE SPRAYED SHAVING CREAM ON HER BUTTOCKS AND ON HER CHEST AND VAGINAL AREA. THE CHILD PROTESTED THAT SHE DIDN'T WANT TO PLAY ANYMORE, SHE KICKED BUT WAS UNABLE TO GET AWAY. FAGAN

TOLD THE GIRL TO TAKE A SHOWER AFTER THE INCIDENT. SEE PETITIONER EXHIBIT 22. FAGAN'S CONDUCT TOWARD MP WAS SEXUALLY VIOLENT CONDUCT AND CHILD MOLESTATION UNDER THE ADAM WALSH ACT.

ON JUNE 28, 2005, FAGAN PLEADED GUILTY TO BATTERY OF A CHILD AND FALSE IMPRISONMENT. HE RECEIVED A FIVE YEAR TERM OF IMPRISONMENT FOR THE BATTERY OFFENSE PLUS ONE YEAR AND ONE DAY FOR FALSE IMPRISONMENT, WITH NO SUPERVISION TO FOLLOW. SEE PETITIONER EXHIBITS 23 AND 24. THESE SENTENCES EXPIRED ON APRIL 17, 2008. SEE PETITIONER EXHIBIT 24.

AS A RESULT OF THE CONVICTIONS IN FLORIDA, FAGAN IS REQUIRED TO REGISTER AS A SEX OFFENDER IN FLORIDA. SEE PETITIONER EXHIBIT 28. FAGAN DISPUTES THAT HE SHOULD HAVE TO REGISTER AS A SEX OFFENDER IN FLORIDA AND IS LITIGATING THE ISSUE.

ON AUGUST 31, 2015, FAGAN WAS CERTIFIED AS SEXUALLY DANGEROUS UNDER 18 U.S.C. SECTION 4248.

AS MENTIONED, FAGAN HAS A LONG HISTORY OF DRUG AND ALCOHOL ABUSE, ALONG WITH SEVERAL DRUG AND ALCOHOL-RELATED ARRESTS. SEE PETITIONER EXHIBIT 20.

DURING A 1991 ARREST FOR SEXUAL BATTERY, DISORDERLY INTOXICATION AND BATTERY ON A POLICE OFFICER, HIS BLOOD ALCOHOL LEVEL WAS ROBBERY AS .27. HE ADMITTED TO BEING UNDER THE INFLUENCE OF ALCOHOL AND COCAINE AT THE TIME.

WHILE ON PROBATION IN 1992, HE TESTED POSITIVE FOR MARIJUANA. IN DECEMBER OF 1993, HIS PROBATION WAS REVOKED AFTER HIS ARREST FOR SELLING COCAINE.

IN 1995, FAGAN WAS ORDERED TO PARTICIPATE IN THE PALM BEACH COUNTY SHERIFF'S OFFICE DRUG FARM, AN 18-MONTH IN-CUSTODY DRUG TREATMENT PROGRAM. HE WAS RELEASED FROM THE PROGRAM IN 1996; HOWEVER, HE SUBSEQUENTLY RELAPSED AND CONTINUED ABUSING DRUGS. SEE PETITIONER EXHIBIT 20.

FAGAN REGULARLY USED COCAINE AND OTHER DRUGS ON THE WEEKENDS IN 2002, THE LAST TIME HE WAS IN THE COMMUNITY. HE ADMITS THAT HE PROBABLY USED COCAINE THE NIGHT BEFORE THE EVENTS WHICH PRECIPITATED HIS ARREST IN 2002 CONCERNING MP. SEE PETITIONER'S EXHIBIT 31.

IN 2007, WHILE IN BOP CUSTODY, FAGAN COMPLETED A 40-HOUR DRUG EDUCATION PROGRAM. IN 2009, HE DECLINED TO PARTICIPATE IN THE BOP'S RESIDENTIAL DRUG ABUSE PROGRAM. SEE PETITIONER EXHIBIT 27.

AS FOR FAGAN'S MENTAL HEALTH HISTORY AND TREATMENT, IN 1990 FAGAN WAS REFERRED FOR A PSYCHIATRIC EVALUATION FOLLOWING A REPORT THAT HE ATTEMPTED SUICIDE BY OVERDOSING ON ASPIRIN. HE WAS DIAGNOSED WITH ADJUSTMENT DISORDER WITH MIXED EMOTIONAL FEATURES AND REFERRED FOR OUT-PATIENT THERAPY. FAGAN PARTICIPATED IN PSYCHIATRIC THERAPY WITH A THERAPIST NAMED RESNER. SEE PETITIONER EXHIBIT 20.

IN 1992, FOLLOWING FAGAN'S ARREST FOR SEXUALLY

ASSAULTING SN, HE UNDERWENT A PSYCHOLOGICAL EVALUATION WITH A THERAPIST NAMED HESHEN (PHONETIC). ACCORDING TO THE PRESENTENCE REPORT, AT PETITIONER EXHIBIT 20, HESHEN OPINED THAT FAGAN WAS A PSYCHOPATH OR ANTISOCIAL PERSONALITY. SHE OPINED THAT HE WAS EGOCENTRIC AND SHALLOW AND SUPERFICIAL IN HIS RELATIONSHIP WITH OTHERS, USING THEM ONLY TO MEET HIS OWN PERSONAL NEEDS. SEE PETITIONER EXHIBIT 20.

IN 2006 AND 2007, FAGAN SUCCESSFULLY PARTICIPATED IN THE BOP'S CODE PROGRAM, A RESIDENTIAL COGNITIVE BEHAVIORAL TREATMENT PROGRAM FOR INMATES WITH SUBSTANCE ABUSE AND/OR MENTAL DISORDERS. HE HAS NOT PARTICIPATED IN ANY SEX OFFENDER TREATMENT.

DR. DAWN GRANEY IS A LICENSED FORENSIC PSYCHOLOGIST EMPLOYED BY THE BUREAU OF PRISONS AT FCI BUTNER. DR. GRANEY HAS CONDUCTED NUMEROUS SEX OFFENDER EVALUATIONS ON BEHALF OF THE BOP AND HAS TESTIFIED AS AN EXPERT WITNESS IN SEX OFFENDER CIVIL COMMITMENT HEARINGS. DR. GRANEY'S CV AND FORENSIC EVALUATION OF FAGAN ARE LOCATED AT GOVERNMENT'S EXHIBIT 1 AND 2.

DR. GRANEY'S REPORT ADDRESSES VARIOUS AREAS OF FAGAN'S BACKGROUND AND HISTORY, INCLUDING HIS DEVELOPMENT, PERSONAL, MARITAL, EDUCATIONAL WORTH, SUBSTANCE ABUSE, CRIMINAL AND MENTAL HEALTH AND MEDICAL HISTORY. DR. GRANEY'S REPORT ALSO INCLUDES HER DIAGNOSTIC IMPRESSIONS,

HER USE OF ACTUARIAL INSTRUMENTS, AND HER OPINION REGARDING FAGAN'S SEXUAL DANGEROUSNESS.

DR. GRANEY INTERVIEWED FAGAN AS PART OF HER EVALUATION. AS PART OF DR. GRANEY'S EVALUATION, DR. GRANEY HAD FAGAN COMPLETE THE MULTIPHASIC SEX INVENTORY II, A SELF-REPORT QUESTIONNAIRE DESIGNED TO MEASURE A VARIETY OF PSYCHOSEXUAL CHARACTERISTICS. TEST PUBLISHERS COMPLETED THE SCORING AND INTERPRETATION OF THE OF THE MS-II. THE MS-II RESULTS INDICATE THAT FAGAN WAS GUARDED AND SOMEWHAT EVASIVE IN HIS TEST RESPONSES, THAT HE PRESENTED IN A HIGHLY DEFENSIVE RANGE REGARDING HIS INTEREST IN SEX AND ATTEMPTED TO PROJECT HIMSELF AS ASEXUAL. HE PRESENTED HIMSELF AS BEING SEXUALLY INTERESTED IN ADULT FEMALES.

DR. GRANEY ALSO ASSESSED FAGAN FOR THE PRESENCE OF PSYCHOPATHY USING THE HARE PSYCHOLOGY CHECKLIST REVISED, KNOWN AS THE PCLR. FAGAN SCORED A 29, WHICH FALLS IN THE 79 PERCENTILE WHEN COMPARED TO SCORES OF OTHER MALE OFFENDERS. THE MAXIMUM SCORE IN THE PCLR IS 40 AND THE CUTOFF FOR PSYCHOPATHY IS 30.

DR. GRANEY OPINED THAT ACCORDING TO THE CRITERIA SET FORTH IN THE DSM-V, FAGAN WARRANTS THE FOLLOWING DIAGNOSES: ONE, OTHERWISE SPECIFIED PARAPHILIC DISORDER, NONCONSENT; TWO, ANTISOCIAL PERSONALITY DISORDER, PSYCHOPATHIC TRAITS; THREE, ALCOHOL USE DISORDER, MODERATE

IN A CONTROLLED ENVIRONMENT; AND FOUR, COCAINE USE DISORDER, MODERATE IN A CONTROLLED ENVIRONMENT.

DR. GRANEY EXPLAINED THE BASES OF EACH OF HER DIAGNOSES AND OPINED THAT SUCH DIAGNOSES QUALIFIES AS SERIOUS MENTAL ILLNESSES, ABNORMALITIES, OR DISORDERS IN THIS CASE. FURTHERMORE, SHE OPINED THAT AS A RESULT OF THESE DIAGNOSES, IN HER OPINION FAGAN WOULD HAVE SERIOUS DIFFICULTY REFRAINING FROM SEXUALLY VIOLENT CONDUCT.

WITH REGARD TO THE OTHERWISE SPECIFIED PARAPHILIC DISORDER NON-CONSENT DIAGNOSIS, DR. GRANEY EXPLAINED THAT FAGAN MEETS THE CRITERIA FOR THAT DIAGNOSIS, BASED IN PART ON HIS PERSISTENT FORCED SEXUAL CONTACT WITH NUMEROUS SIMILARLY AGED, NON-CONSENTING FEMALES DURING THE PERIODS OF 1989 THROUGH 1991, AND HIS CONDUCT TOWARDS THE EIGHT YEAR OLD GIRL, MP, IN 2002.

DR. GRANEY NOTED THAT WHILE FAGAN CLAIMED THAT HIS SEXUAL ENCOUNTERS FROM 1989 TO 1991 WERE CONSENSUAL, THE VICTIMS' ACCOUNTS OF THE INCIDENTS SUGGEST THAT FAGAN WAS AWARE OF THE NON-CONSENTED NATURE OF THE SEXUAL BEHAVIORS. DR. GRANEY NOTED THAT MANY OF THE VICTIMS' ACCOUNTS INDICATED THAT FAGAN FORCIBLY ATTEMPTED TO DISROBE, KISS, FONDLE AND/OR VAGINALLY PENETRATE SOME OF THE VICTIMS WITH HIS PENIS OR FINGER.

AS ADDITIONAL SUPPORT FOR HER DIAGNOSIS, DR. GRANEY OPINED THAT FAGAN SEXUALLY ASSAULT OR ATTEMPTED TO

SEXUALLY ASSAULT SOME VICTIMS WHILE THEY WERE IN PRECARIOUS POSITIONS, SUCH AS IN DEEP OCEAN WATER, WHILE RIDING A SCOOTER, OR UNAWARE OF FAGAN'S PRESENCE OR INTENT, WHICH LIMITED THE VICTIM'S ABILITY TO RESIST HIS ADVANCES OR ASSAULTS. SHE ALSO NOTED THAT FAGAN CONTINUED HIS FORCE SEXUAL CONDUCT ON SEVERAL OCCASIONS, DESPITE THE VICTIM TELLING HIM "NO" OR TO STOP.

DR. GRANEY OPINED THAT ON AT LEAST THREE OCCASIONS, DESPITE THE VICTIM'S VERBAL AND PHYSICAL EFFORTS TO STOP THE SEXUAL CONTACT, FAGAN CONTINUED THE ASSAULT BY EJACULATING ON THE VICTIMS, SUGGESTING TO DR. GRANEY THAT HE MAINTAINED AN ERECTION DESPITE THE VICTIM'S DISTRESS. DR. GRANEY OPINED THAT FAGAN'S MAINTAINING AN ERECTION DURING THE SEXUAL ASSAULTS SHOWS HE WAS SPECIFICALLY AROUSED TO THE NON-CONSENSUAL NATURE OF THE ASSAULTS.

AS FURTHER SUPPORT FOR THIS DIAGNOSIS, DR. GRANEY OPINED THAT DESPITE FAGAN'S ARREST FOR NUMEROUS ALLEGED SEXUAL OFFENSES IN 1990, AND HIS BEING SUSPECTED OF THE MARCH 17, 1990, RAPE AND MURDER OF A TEEN-AGE GIRL NAMED RACHEL HURLEY, HE SEXUALLY ASSAULTED A TEEN-AGED GIRL BY A DUMPSTER OUTSIDE OF A HOTEL IN 1991. DESPITE BEING ARRESTED AND CHARGED FOR THAT 1991 CONDUCT INVOLVING SN AND CONVICTED OF A LESSER CHARGE, HE WENT ON TO ASSAULT AN EIGHT YEAR OLD GIRL IN 2002.

DR. GRANEY ALSO DIAGNOSED FAGAN WITH ANTISOCIAL

PERSONALITY DISORDER.  AS SUPPORT FOR THIS DIAGNOSIS, SHE NOTED FAGAN'S REPETITIVE VIOLATIONS OF SOCIAL NORMS BEFORE AGE 15, INCLUDING HIS USE OF MARIJUANA, BEING SENT TO A CAMP FOR TROUBLED YOUTH, AND RUNNING AWAY FROM THE CAMP.

AS FURTHER SUPPORT FOR THIS DIAGNOSIS, DR. GRANEY NOTED FAGAN'S NUMEROUS ARRESTS, DESPITE CONVICTIONS, DESPITE NEGATIVE CONSEQUENCES, HIS IMPULSIVITY AND FAILURE TO PLAN AHEAD, HIS FAILURE TO COMPLY WITH SUPERVISION, HIS CHRONIC SUBSTANCE ABUSE, HIS REPEATED USE OF AGGRESSION TO GAIN COMPLIANCE, HIS RECKLESS DISREGARD FOR THE SAFETY OF HIMSELF AND OTHERS, AND HIS FAILURE TO TAKE RESPONSIBILITY OR HAVE REMORSE.

DR. GRANEY OPINED THAT FAGAN'S USE OF ALCOHOL AND COCAINE BEFORE HIS MOST RECENT ARREST SUPPORTS HER DIAGNOSIS OF ALCOHOL USE DISORDER, MODERATE, AND COCAINE USE DISORDER, MODERATE.

DR. GRANEY USED THE STATIC 99-R TO ASSESS FAGAN'S RISK OF SEXUAL REOFFENSE.  SHE SCORED FAGAN WITH A 9 ON A SCALE THAT RANGES FROM MINUS 3 TO 12.  AT TRIAL SHE CORRECTED THE SCORE IN THE REPORT TO BE AN 8.  INDIVIDUALS WITH THE SCORE OF 8 FROM THE HIGH RISK/HIGH NEEDS GROUP SAMPLE, HAVE BEEN FOUND TO SEXUALLY REOFFEND AT A RATE OF APPROXIMATELY 35 PERCENT WITHIN FIVE YEARS, ACCORDING TO DR. GRANEY.  DR. GRANEY ALSO CONSIDERED WHETHER ANY DYNAMIC RISK FACTORS ARE PRESENT IN THIS CASE THAT COULD

EXACERBATE FAGAN'S RISK OF SEXUAL REOFFENSE. SHE OPINED THAT THE FOLLOWING DYNAMIC RISK FACTORS ARE PRESENT: RELATIVE LACK OF SIGNIFICANT SOCIAL INFLUENCES, ALLEGED INTIMACY DEFICITS, PROBLEMS WITH SEXUAL OR SELF-REGULATION, NONCOOPERATION WITH SUPERVISION, AND PROBLEMS WITH GENERAL SELF-REGULATION. WITH REGARD TO THESE DYNAMIC RISK FACTORS, DR. GRANEY NOTED THAT ASIDE FROM FAGAN'S STEPSISTER BECKY, WHO RESIDES IN TEXAS AND REMAINS SUPPORTIVE OF FAGAN, HE LACKED ANY SUFFICIENT SOCIAL SUPPORT. SHE NOTED THAT FAGAN'S HISTORY IS POSITIVE FOR INTIMACY DEFICIT, AS DEMONSTRATED BY THE BREAKUP OF HIS MARRIAGE, HIS APPARENT HOSTILITY TOWARDS WOMEN, AND HIS LACK OF CONCERN FOR OTHERS. ACCORDING TO DR. GRANEY, FAGAN'S PROBLEM IN GENERAL WITH SELF-REGULATION WHILE IN THE COMMUNITY ARE APPARENT FROM THE EVIDENCE AND HIS NONCOOPERATION WITH SUPERVISION IS EVIDENT FROM HIS REPEATED VIOLATIONS OF PROBATION.

BASED ON THE ABOVE AND AS SET FORTH IN THE REPORT AND AS SHE TESTIFIED TO AT TRIAL, DR. GRANEY OPINED THAT FAGAN MEETS THE CRITERIA FOR CIVIL COMMITMENT UNDER THE ADAM WALSH ACT.

AS SUPPORT FOR HER OPINION THAT FAGAN WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED, DR. GRANEY RELIED UPON HER VIEW OF THE RECORD EVIDENCE, INCLUDING

FAGAN'S SCORE ON THE STATIC 99-R, THE PRESENCE OF THE ALLEGED DYNAMIC RISK FACTORS FOR SEXUAL REOFFENSE THAT SHE IDENTIFIED, HIS LACK OF SEX OFFENDER TREATMENT, HIS HISTORY OF SEXUAL OFFENDING AND DRUG AND ALCOHOL ABUSE, HIS POOR VOLITIONAL CONTROL AND HIS OFFENDING WHILE UNDER SUPERVISION.

DR. GRANEY OPINED THAT FAGAN'S LACK OF INSIGHT INTO HIS SEXUAL OFFENDING IS HIGHLY CONCERNING, GIVEN THE REPEATED PROBLEMS HE HAS EXPERIENCED DUE TO HIS SEXUAL OFFENDING. DR. GRANEY NOTED THAT FAGAN IS SUBJECT TO A THREE YEARS TERM OF SUPERVISED RELEASE FOLLOWING HIS RELEASE FROM FEDERAL CUSTODY. CF, *UNITED STATES V. NEWHAUSER*, 745 F.3D 125, (4TH CIRCUIT 2014). NONETHELESS, DR. GRANEY OPINED THAT CONSIDERING FAGAN'S DIAGNOSIS HISTORY AND RISK FACTORS, ALONG WITH HIS LIMITED SOCIAL SUPPORT AND COMMUNITY RESOURCES, HIS PROGNOSIS IS CONSIDERED POOR.

DR. KAREN PARKER IS A FORENSIC PSYCHOLOGIST IN FLORIDA WHO SPECIALIZES IN SEX OFFENDER EVALUATIONS. SHE HAS CONDUCTED NUMEROUS SEX OFFENDER FORENSIC EVALUATIONS IN FLORIDA AND HAS TESTIFIED AS AN EXPERT WITNESS IN FLORIDA STATE SEX OFFENDER CIVIL COMMITMENT HEARINGS. SEE PETITIONER'S EXHIBIT 3.

IN 2008, DR. PARKER COMPLETED A FORENSIC EVALUATION REPORT ON FAGAN BASED ON HER RECORD REVIEW, WHEREIN SHE

OPINED THAT FAGAN MET THE CRITERIA FOR CIVIL COMMITMENT AS A SEXUALLY VIOLENT PERSON UNDER FLORIDA CIVIL COMMITMENT LAW. SEE PETITIONER'S EXHIBIT 4. AT THE TIME OF THIS 2008 EVALUATION, FAGAN WAS SERVING HIS FEDERAL SENTENCE IN BOP CUSTODY FOR BEING A FELON IN POSSESSION OF A FIREARM. FLORIDA DID NOT COMMENCE CIVIL COMMITMENT PROCEEDINGS AGAINST FAGAN.

ON NOVEMBER 30, 2015, DR. PARKER COMPLETED A FORENSIC EVALUATION REPORT ON FAGAN ON BEHALF OF THE GOVERNMENT IN THIS CASE. SEE PETITIONER EXHIBIT 5. AS PART OF THE REVIEW PROCESS, DR. PARKER INTERVIEWED FAGAN. SHE OPINED THAT FAGAN MEETS THE CRITERIA FOR CIVIL COMMITMENT AS A SEXUALLY DANGEROUS PERSON UNDER 18 U.S.C. SECTION 4248. SHE OPINED THAT FAGAN HAS ENGAGED IN SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION ON NUMEROUS OCCASIONS, INCLUDING SEXUAL OFFENSES HE COMMITTED AGAINST NUMEROUS YOUNG GIRLS RANGING IN AGE FROM 12 TO 16, FROM 1989 TO 1991 AND THE SEXUAL OFFENSE THAT HE COMMITTED AGAINST AN EIGHT YEAR OLD GIRL IN 2002. SEE PETITIONER'S EXHIBIT 5.

DR. PARKER ALSO OPINED THAT FAGAN SUFFERS FROM THE FOLLOWING SERIOUS MENTAL ILLNESSES, ABNORMALITIES OR DISORDER. ONE, OTHER SPECIFIED PARAPHILIC DISORDER, NON-CONSENT, IN REMISSION IN A CONTROLLED ENVIRONMENT. TWO, ANTISOCIAL PERSONALITY DISORDER. THREE, ALCOHOL USE DISORDER, MODERATE, SUSTAINED REMISSION IN A CONTROLLED

ENVIRONMENT. FOUR, COCAINE USE DISORDER, MODERATE, IN SUSTAINED REMISSION IN A CONTROLLED ENVIRONMENT. FIVE, CANNABIS USE DISORDER, MILD, IN SUSTAINED REMISSION IN A CONTROLLED ENVIRONMENT.

DR. PARKER'S REPORT DETAILED THE CRITERIA FOR THESE DISORDERS AND THE BASES FOR HER OPINION THAT FAGAN CURRENTLY SUFFERS FROM SUCH DISORDERS. SHE ALSO EXPOUNDED UPON THIS IN HER TESTIMONY.

DR. PARKER OPINED THAT FAGAN MEETS THE CRITERIA FOR DIAGNOSIS OF OTHER SPECIFIED PARAPHILIC DISORDER, NON-CONSENT, BASED ON THE EVIDENCE THAT HE HAS HAD RECURRENT, INTENSE, DEVIANT SEXUALLY AROUSING BEHAVIORS THAT HAVE OCCURRED OVER A PERIOD OF AT LEAST SIX MONTHS, WHICH CAUSED MARKED DISTRESS IN IMPORTANT AREAS OF HIS FUNCTIONING. SHE EXPLAINED THAT FAGAN'S SEXUAL BEHAVIOR HAD BEEN DIRECTED AT PERSONS WHO DID NOT WANT TO HAVE SEX WITH HIM, AND THAT SUCH BEHAVIORS HAVE CAUSED MARKED DISTRESS IN HIS FUNCTIONING BY CAUSING HIM TO INCUR MULTIPLE SANCTIONS.

DR. PARKER OPINED THAT AS A RESULT OF FAGAN'S SERIOUS MENTAL DISORDERS, HE WOULD HAVE SERIOUS DIFFICULTY REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED. IN FORMULATING HER OPINION, DR. PARKER OPINED ON FAGAN'S RISK OF SEXUAL REOFFENSE USING THE ACTUARIAL TOOLS AND DYNAMIC RISK AND NEEDS

ASSESSMENT. DR. PARKER USED THE STATIC 99-R ACTUARIAL TOOL TO CONSIDER FAGAN'S STATIC RISK FACTORS AS COMPARED TO OTHERS SIMILARLY SITUATED SEX OFFENDERS. LIKE DR. GRANEY, DR. PARKER SCORED FAGAN AN 8 ON THE STATIC 99-R, WHICH FALLS IN THE HIGH RISK CATEGORY FOR SEXUAL REOFFENSE.

DR. PARKER ALSO ASSESSED FAGAN FOR THE PRESENCE OF PSYCHOPATHY UNDER THE PCLR. FAGAN SCORED A 28, WHICH DR. PARKER OPINED IS A HIGH MATCH TO THE PROTOPHYTIC PSYCHOPATH. DR. PARKER OPINED THAT FOR RISK ASSESSMENT PURPOSES, FAGAN'S PCLR RESULTS SHOW THAT FAGAN IS CHARMING, MANIPULATIVE AND GLIB, AND CAN EASILY MEET OTHERS. THE RESULTS ALSO SUGGEST THAT HE'S NOT CURRENTLY EMPATHETIC AND LACKS HONESTY WITH HIMSELF AND OTHERS, ACCORDING TO DR. PARKER.

DR. PARKER OPINED THAT FAGAN'S PSYCHOSEXUAL RELATIONSHIP, SEXUAL, CRIMINAL AND SUBSTANCE ABUSE HISTORY, ARE AGGRAVATED FACTORS IN CONSIDERING HIS RISK FOR SEXUAL REOFFENSE IF RELEASED. DR. PARKER ALSO OPINED THAT HIS POOR ADJUSTMENT IN THE COMMUNITY IS AN AGGRAVATING RISK FACTOR AND NOTED THAT HE DID NOT HAVE, IN HER OPINION, AN ADEQUATE RELEASE PLAN.

DR. PARKER OPINED THAT IN ADDITION TO FAGAN'S SEXUAL OFFENSES, FAGAN HAD ACTED VIOLENTLY TOWARD FRIENDS, GIRLFRIENDS AND LAW ENFORCEMENT. DR. PARKER OPINED ON

FAGAN'S PATTERN OF PLACING HIS VICTIMS IN PRECARIOUS POSITIONS WHILE HE ATTEMPTED TO ENGAGE IN SEXUAL ACTS WITH THEM, SUCH AS TAKING THEM INTO OCEAN WATER OVER THEIR HEAD, RESTRAINING THEIR ARMS, OR TAKING THEIR CLOTHES. DR. PARKER FOUND IT SIGNIFICANT THAT DESPITE HAVING BEEN CHARGED IN MAY 1990 WITH NUMEROUS SEX OFFENSES, FAGAN AGAIN IN 1991 AND 2002, ENGAGED IN SEXUALLY ASSAULTIVE CONDUCT TOWARDS FEMALES. DR. PARKER ALSO RELIED ON FAGAN'S INAPPROPRIATE SEXUAL RELATIONSHIP WITH MARISSA GOLDMAN WHICH BEGAN WHEN MS. GOLDMAN WAS AGE 14 AND FAGAN WAS 23.

DR. PARKER OPINED THAT THESE TOTALITY OF FACTS, INCLUDING THE ACTUARIAL DATA OR OTHER FACTORS SUPPORT HER OPINION THAT FAGAN LACKS VOLITIONAL CONTROL. DR. PARKER OPINED THAT FAGAN, DUE TO HIS SERIOUS MENTAL DISORDERS, WOULD HAVE SERIOUS DIFFICULTY REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED.

DR. PARKER ALSO OPINED THAT CIVIL COMMITMENT FOR TREATMENT IS, IN HER OPINION, THE ONLY REASONABLE OPTION TO KEEP THE COMMUNITY SAFE AND ALLOW FAGAN TO MAKE PROGRESS IN ADDRESSING HIS ALLEGED BEHAVIORAL ISSUES AND RISK FACTORS.

DR. JOSEPH PLAUD IS A PSYCHOLOGIST WHO SPECIALIZES IN FORENSIC PSYCHOLOGICAL SERVICES. DR. PLAUD CONDUCTED AN EVALUATION OF FAGAN IN THIS CASE. DR. PLAUD INTERVIEWED

FAGAN ON OCTOBER 27, 2015, AS PART OF HIS EVALUATION. HIS COMPLETED REPORT IS AT RESPONDENT'S EXHIBIT 1.

IN DR. PLAUD'S REPORT, DR. PLAUD OPINED THAT FAGAN HAD ENGAGED IN CHILD MOLESTATION OR SEXUALLY VIOLENT CONDUCT WITHIN THE MEANING OF THE ADAM WALSH ACT. SEE RESPONDENT'S EXHIBIT 1, PAGE TWO. DR. PLAUD OPINED, HOWEVER, THAT FAGAN DID NOT SUFFER FROM A SERIOUS MENTAL ILLNESS, ABNORMALITY OR DISORDER.

DR. PLAUD ALSO OPINED THAT FAGAN WOULD NOT HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED. DR. PLAUD'S REPORT INCLUDED EIGHT APPENDICES. APPENDIX ONE PROVIDED BACKGROUND INFORMATION ON FAGAN AND DISCUSSED DR. PLAUD'S CLINICAL INTERVIEW OF FAGAN. APPENDIX ONE DISCUSSED FAGAN'S FAMILY AND EDUCATIONAL BACKGROUND, FAGAN'S SEXUAL HISTORY, FAGAN'S CRIMINAL HISTORY AND FAGAN'S SEXUAL OFFENSE HISTORY. APPENDIX ONE ALSO DESCRIBED VARIOUS PROGRAMS THAT FAGAN HAD COMPLETED DURING HIS FEDERAL SENTENCE FOR BEING A FELON IN POSSESSION OF A FIREARM, INCLUDING THE CODE PROGRAM, THE SELF-IMPROVEMENT, THE 40 HOUR DRUG EDUCATION PROGRAM, AND AN ANGER MANAGEMENT PROGRAM.

APPENDIX TWO PROVIDED RELEVANT DEFINITIONS OF THE PERTINENT LEGAL INFORMATION, INCLUDING THE REGULATORY DEFINITIONS OF SEXUALLY VIOLENT CONDUCT AT 28 CFR SECTION

549.92, CHILD MOLESTATION AT 28 CFR 549.93, AND SEXUALLY DANGEROUS TO OTHERS AT 28 CFR SECTION 549.94. IN APPENDIX TWO, DR. PLAUD ALSO QUOTED 28 CFR 549.95, WHICH DISCUSSES FACTORS THAT BOP MENTAL HEALTH PROFESSIONALS MAY CONSIDER IN DETERMINING WHETHER A PERSON WOULD HAVE "SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED."

APPENDIX THREE DESCRIBED DR. PLAUD'S PROFESSIONAL QUALIFICATIONS AS A CLINICAL AND FORENSIC PSYCHOLOGIST.

APPENDIX FOUR DESCRIBED DR. PLAUD'S SOURCES OF INFORMATION FOR HIS REPORT.

APPENDIX FIVE DESCRIBED THE LIMITS OF CONFIDENTIALITY THAT APPLIED TO DR. PLAUD'S INTERACTIONS WITH FAGAN AND DR. PLAUD'S OPINIONS CONCERNING FAGAN.

APPENDIX SIX PROVIDED DR. PLAUD'S DIAGNOSTIC ANALYSIS OF FAGAN. DR. PLAUD OPINED THAT "BASED UPON HIS SEXUAL OFFENSE HISTORY AND CONTEXT OF HIS OVERALL SEXUAL HISTORY AND HIS CURRENT PSYCHOSEXUAL FUNCTIONING, THE DIAGNOSIS OF A SEXUALLY BASED MENTAL DISORDER IS NOT APPROPRIATE IN THIS CASE." IN APPENDIX SIX, DR. PLAUD DESCRIBED THE PARAPHILIC DISORDERS IN DSM-V, AND THE CRITERIA NECESSARY FOR A DIAGNOSIS OF A PARAPHILIC DISORDER UNDER DSM-V. DR. PLAUD OPINED THAT FAGAN COULD NOT PROPERLY BE DIAGNOSED WITH A PARAPHILIC DISORDER UNDER DSM-V.

DR. PLAUD'S REPORT ALSO OPINED THAT FAGAN DID NOT

HAVE A PERSONALITY DISORDER UNDER THE DSM-V DIAGNOSTIC CRITERIA. DR. PLAUD SPECIFICALLY CONSIDERED AND REJECTED THE DIAGNOSIS OF ANTISOCIAL PERSONALITY DISORDER. AFTER RECOUNTING THE DIAGNOSTIC CRITERIA FOR ANTISOCIAL PERSONALITY DISORDER, DR. PLAUD OPINED THAT "FAGAN'S GENERAL CRIMINAL HISTORY AND HIS FUNCTIONING AS AN ADULT DO NOT SUPPORT" THE CLINICAL DIAGNOSIS OF ANTISOCIAL PERSONALITY DISORDER.

IN APPENDIX SEVEN, DR. PLAUD'S REPORT PROVIDES A STATISTICAL RISK ANALYSIS OF FAGAN. DR. PLAUD SCORED FAGAN AS AN 8 ON THE STATIC 99-R. ACCORDING TO DR. PLAUD, THIS SCORE PLACED FAGAN IN THE COMPARATIVE GROUP, BASE RECIDIVISM ESTIMATE OF 35 PERCENT WITHIN FIVE YEARS.

IN APPENDIX EIGHT, DR. PLAUD PROVIDED AN ADDITIONAL ANALYSIS OF PSYCHOLOGICAL FACTORS, INCLUDING DYNAMIC SEXUAL RISK FACTORS CONCERNING FAGAN. DR. PLAUD EXPLAINED THE IPDE MANUAL AND INTERVIEWING TECHNIQUE TO HELP ASSESS PERSONALITY DISORDERS. DR. PLAUD OPINED THAT FAGAN'S IPDE SCREENING QUESTIONNAIRE AND TESTING RESULTS DID NOT INDICATE THE PRESENCE OF ANY OF THE 11 DSM-IV PERSONALITY DISORDERS.

DR. PLAUD ALSO EXPLAINED THAT PAI IS AN OBJECTIVE INVENTORY OF ADULT PERSONALITY. THE PURPOSE OF THE PAI IS TO ASSESS THE POSSIBILITY OF PSYCHOPATHOLOGICAL SYNDROMES. THE PAI RESULTS CONCERNING FAGAN SHOW THAT FAGAN GENERALLY

RESPONDED IN A SYSTEMATIC FASHION BUT SOMETIMES DEFENSIVELY WITH RESPECT TO HIS OWN SHORTCOMINGS. FURTHERMORE, THE PAI CLINICAL PROFILE ALSO REVEALED THAT FAGAN UNDERSTOOD THE DELETERIOUS IMPACT THAT SUBSTANCE ABUSE HAS HAD ON FAGAN'S LIFE.

DR. DIANE LYTTON, PHD., IS A LICENSED PSYCHOLOGIST AND THE COURT'S APPOINTED EXAMINER IN THIS CASE. HER FORENSIC REPORT IS AT RESPONDENT'S EXHIBIT 3. ON OCTOBER 13, 2015, DR. LYTTON INTERVIEWED FAGAN AS PART OF HER EVALUATION.

DR. LYTTON OPINED THAT FAGAN DOES NOT HAVE A SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER AS A RESULT OF WHICH FAGAN WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION. DR. LYTTON'S REPORT DESCRIBED THE INFORMED CONSENT PROCESS WITH FAGAN AND RECOUNTED THE SOURCES OF INFORMATION ON WHICH SHE RELIED IN FORMING HER OPINIONS.

DR. LYTTON OPINED THAT, OTHER THAN FAGAN'S HISTORY OF DRUG AND ALCOHOL ABUSE, HER CLINICAL IMPRESSION OF FAGAN WAS THAT FAGAN LACKS A SERIOUS MENTAL DISORDER.

DR. LYTTON'S REPORT RECOUNTS FAGAN'S SOCIAL AND FAMILY BACKGROUND AS COMPLEX. DR. LYTTON'S REPORT ALSO DESCRIBES FAGAN'S EDUCATION, WORK HISTORY, AND WORK AND MENTAL HEALTH HISTORY AND NOTES THAT FAGAN HAS BEEN LARGELY COMPLIANT WITH PRISON RULES SINCE BEING FEDERALLY

INCARCERATED AT AGE 29 IN 2002 FOR BEING A FELON IN POSSESSION OF A FIREARM. FAGAN IS NOW AGE 43. DURING HIS FEDERAL PRISON SENTENCE, FAGAN GOT INTO A FIGHT WITH ANOTHER INMATE IN OCTOBER OF 2005, AND POSSESSED STAMPS WHICH ARE A TOOL OF GAMBLING WITHIN THE PRISON. OTHER THAN THESE INCIDENTS, FAGAN HAS HAD NO OTHER DISCIPLINE AND NO SEX-RELATED OFFENSES, NO SEX-RELATED CHARGES, NO CHARGES CONCERNING CONTRABAND OR SEX-RELATED CONTRABAND WHILE INCARCERATED. ADDITIONALLY, FAGAN HAS HELD NUMEROUS JOBS WHILE INCARCERATED.

DR. LYTTON'S REPORT RECOUNTS FAGAN'S LEGAL HISTORY. DR. LYTTON ALSO NOTES THAT FAGAN ADMITTED SOME ASPECTS OF SOME OF THE SEXUAL OFFENSES, BUT NOT OTHERS. DR. LYTTON'S REPORT DISCUSSES THE DSM-V. DR. LYTTON DESCRIBES BOTH PARAPHILIC DISORDERS WITHIN THE DSM-V AS WELL AS PERSONALITY DISORDERS WITHIN THE DSM-V. DR. LYTTON OPINED THAT PARAPHILIA, NOT OTHERWISE SPECIFIED, NON-CONSENT, IS NOT, IN HER OPINION, A VALID PARAPHILIC DIAGNOSIS IN THE DSM-V. SEE RESPONDENT'S EXHIBIT 3, PAGES 15 TO 16. LIKEWISE, DR. LYTTON DOES NOT BELIEVE THAT HEBEPHILIA IS A VALID DIAGNOSIS UNDER THE DSM-V. SEE A DISCUSSION OF THE SAME PAGES IN HER REPORT.

IN ANY EVENT, DR. LYTTON OPINED IN HER REPORT THAT FAGAN'S SEXUAL OFFENDING IN THE LATE 1980S AND EARLY 1990'S, WAS CRIMINAL BEHAVIOR BUT NOT SEXUALLY DEVIANT

BEHAVIOR. DR. LYTTON REJECTED DIAGNOSING FAGAN WITH A PARAPHILIA, NOT OTHERWISE SPECIFIED, NON-CONSENT, EVEN IF THAT IS A VALID DIAGNOSIS UNDER THE DSM-V BECAUSE OF THE 2002 ASSAULT OF THE EIGHT YEAR OLD GIRL THAT FAGAN WAS BABYSITTING. DR. LYTTON ALSO CONSIDERED WHETHER TO DIAGNOSE FAGAN WITH PEDOPHILIA, BUT EXPLAINED IN HER REPORT WHY FAGAN'S BEHAVIOR AND HISTORY DO NOT WARRANT A PEDOPHILIA DIAGNOSIS. SEE ID AT 16. DR. LYTTON ALSO CONSIDERED BUT REJECTED A DIAGNOSIS OF ANTISOCIAL PERSONALITY DISORDER, PARTICULARLY GIVEN FAGAN'S LARGELY COMPLIANT PRO-SOCIAL BEHAVIOR IN PRISON BETWEEN 2002 AND THE DATE OF HER REPORT AND UP TO THE DATE OF HER TESTIMONY.

DR. LYTTON ALSO NOTED THAT FAGAN DID NOT -- EXCUSE ME, THAT FAGAN DID INTERACT WITH FEMALE STAFF WHILE INCARCERATED BUT THERE WERE NO INSTANCES OF ANTISOCIAL OR SEXUALLY DEVIANT BEHAVIOR DIRECTED AT FEMALE OR MALE PRISON STAFF. FURTHERMORE, FAGAN HAS NOT BEEN FOUND WITH PORNOGRAPHIC OR OTHER SEXUAL CONTRABAND WHILE IN PRISON.

DR. LYTTON'S REPORT INCLUDED A RISK ASSESSMENT OF FAGAN. LIKE THE OTHER EXPERT WITNESSES IN THE CASE, DR. LYTTON SCORED FAGAN AS AN 8 ON THE STATIC 99-R. DR. LYTTON'S REPORT ALSO DISCUSSED DYNAMIC RISK FACTORS BUT DID NOT FIND ANY TO BE SIGNIFICANT IN THIS CASE AS TO FAGAN.

IN SUMMARY, DR. LYTTON OPINED THAT FAGAN MET PRONG ONE UNDER THE ADAM WALSH ACT BUT NOT PRONG TWO OR PRONG THREE.

AS FOR THE COURT'S CONCLUSIONS OF LAW.

THE UNITED STATES SEEKS THE COMMITMENT OF FAGAN PURSUANT TO 18 U.S.C. SECTION 4248 FOR THE COURT TO ISSUE AN ORDER COMMITTING FAGAN TO THE CUSTODY OF THE ATTORNEY GENERAL UNDER 4248.

THE GOVERNMENT MUST ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT FAGAN IS SEXUALLY DANGEROUS. A PERSON IS SEXUALLY DANGEROUS IF HE HAS ENGAGED OR ATTEMPTED TO ENGAGE IN SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION AND IS SEXUALLY DANGEROUS TO OTHERS. SEE 18, U.S.C. SECTION 4247(A)(5). TO DETERMINE THAT A PERSON IS SEXUALLY DANGEROUS TO OTHERS, A COURT MUST FIND THAT THE PERSON SUFFERS FROM A SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER AS A RESULT OF WHICH HE WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED. SEE 18 U.S.C. SECTION 4247(A)(6). SEE ALSO THE DISCUSSION IN *HALL*, 664 F.3D AT 461.

IN REACHING THE COURT'S DECISION, THE COURT HAS CONSIDERED ALL THE EVIDENCE, INCLUDING THE TESTIMONY OF THE EXPERT WITNESSES, THE TESTIMONY OF THE NONEXPERT WITNESSES, AND THE ADMISSIBLE EXHIBITS. ALTHOUGH THE

COURT DRAWS ON THE EXAMINERS AND EXPERT PSYCHOLOGICAL FINDINGS IN REACHING ITS CONCLUSIONS, THE SCIENCE OF PSYCHOLOGY INFORMS THE COURT'S DECISION BUT DOES NOT DETERMINE THE COURT'S ULTIMATE LEGAL CONCLUSIONS. SEE *KANSAS V. CRANE*, 534 U.S. 407, 413 (2002). IN REACHING THE COURT'S ULTIMATE LEGAL CONCLUSIONS, THE COURT IS NOT LIMITED TO DEFINITIONS USED BY PSYCHOLOGICAL CLINICIANS. SEE *SPRINGER*, 715 F.3D AT 546; *CAPORALE*, 701 F.3D AT 136 AND 142.

AS FOR PRONG ONE, THE GOVERNMENT HAS PROVEN AND ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT FAGAN HAS ENGAGED IN SEXUALLY VIOLENT CONDUCT AND CHILD MOLESTATION.

AS FOR PRONG TWO, DR. GRANEY AND DR. PARKER OPINED THAT FAGAN SUFFERS FROM THE FOLLOWING SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER: OTHER SPECIFIED PARAPHILIC DISORDER, NON-CONSENT; ANTISOCIAL PERSONALITY DISORDER WITH PSYCHOPATHIC TRAITS; COCAINE USE DISORDER; AND ALCOHOL USE DISORDER. DR. PARKER ALSO DIAGNOSED MARIJUANA USE DISORDER.

IN SUPPORT OF THE DIAGNOSIS OF OTHER SPECIFIED PARAPHILIC DISORDER, NON-CONSENT, DR. GRANEY AND DR. PARKER FOCUSED ON FAGAN'S PERSISTENT AND REPEATED SEXUAL BEHAVIOR AGAINST NON-CONSENTING VICTIMS IN THE LATE 1980S AND EARLY 1990'S AND IN THE INCIDENT WITH M.P. IN

2002. THEY ALSO REFERENCED AT TRIAL HIS SEXUAL RELATIONSHIP WITH MARISSA VASQUEZ, WHICH BEGAN WHEN SHE WAS AGE 14 AND HE WAS AGE 23.

THE DSM-V DISCUSSES PARAPHILIC DISORDERS. IT STATES, "PARAPHILIC DISORDERS INCLUDED IN THIS MANUAL ARE: VOYEURISTIC DISORDER, SPYING ON OTHERS IN PRIVATE ACTIVITIES; EXHIBITIONISTIC DISORDER, EXPOSING THE GENITALS; FROTTEURISTIC DISORDER, TOUCHING OR RUBBING AGAINST A NON-CONSENTING INDIVIDUAL; SEXUAL MASOCHISM DISORDER, UNDERGOING HUMILIATION, BONDAGE, OR SUFFERING; SEXUAL SADISM DISORDER, INFLICTING HUMILIATION, BONDAGE OR SUFFERING; PEDOPHILIC DISORDER, SEXUAL FOCUS ON CHILDREN; FETISHISTIC DISORDER, USING NON-LIVING OBJECTS OR HAVING A HIGHLY SPECIFIC FOCUS ON NON-GENITAL BODY PARTS; AND TRANSVESTIC DISORDER, ENGAGING IN SEXUALLY AROUSING CROSS-DRESSING. THESE DISORDERS HAVE TRADITIONALLY BEEN SELECTED FOR SPECIFIC LISTING AND ASSIGNMENT OF EXPLICIT DIAGNOSTICS CRITERIA IN DSM FOR TWO MAIN REASONS: THEY ARE RELATIVELY COMMON IN RELATION TO THE OTHER PARAPHILIC DISORDERS AND SOME OF THEM ENTAIL ACTIONS FOR THEIR SATISFACTION THAT, BECAUSE OF THEIR OBNOXIOUSNESS OR POTENTIAL HARM TO OTHERS, ARE CLASSED AS CRIMINAL OFFENSES. THE EIGHT LISTED DISORDERS DO NOT EXHAUST THE LIST OF POSSIBLE PARAPHILIC DISORDERS. MANY DOZENS OF DISTINCT PARAPHILIAS HAVE BEEN IDENTIFIED AND NAMED AND

ALMOST ANY OF THEM COULD, BY VIRTUE OF ITS NEGATIVE CONSEQUENCE FOR THE INDIVIDUAL OR FOR OTHERS, RISE TO THE LEVEL OF A PARAPHILIC DISORDER. THE DIAGNOSIS OF THE OTHER SPECIFIED AND UNSPECIFIED PARAPHILIC DISORDERS ARE THEREFORE INDISPENSABLE AND WILL BE REQUIRED IN MANY CASES."

THE DSM CONTINUES: "THE TERM 'PARAPHILIA' DENOTES ANY INTENSE AND PERSISTENT SEXUAL INTEREST, OTHER THAN SEXUAL INTEREST IN GENITAL STIMULATION OR PREPARATORY FONDLING WITH PHENOTYPICALLY NORMAL PHYSICALLY MATURE CONSENTING HUMAN PARTNERS. IN SOME CIRCUMSTANCES THAT CRITERIA, "INTENSE AND PERSISTENT" MAY BE DIFFICULT TO APPLY, SUCH AS IN THE ASSESSMENT OF PERSONS WHO ARE VERY OLD OR MEDICALLY ILL AND WHO MAY NOT HAVE "INTENSE" SEXUAL INTEREST OF ANY KIND. IN SUCH CIRCUMSTANCES, THE TERM "PARAPHILIA" MAY BE DEFINED AS ANY SEXUAL INTEREST GREATER THAN OR EQUAL TO NORMOPHILIC SEXUAL INTERESTS.

THERE ARE ALSO SPECIFIC PARAPHILIAS THAT ARE GENERALLY BETTER DESCRIBED AS PREFERENTIAL SEXUAL INTEREST THAN AS INTENSE SEXUAL INTEREST. THE DSM CONTINUES, "A PARAPHILIC DISORDER IS A PARAPHILIA THAT IS CURRENTLY CAUSING DISTRESS OR IMPAIRMENT TO THE INDIVIDUAL OR A PARAPHILIA WHOSE SATISFACTION HAS ENTAILED PERSONAL HARM OR RISK OF HARM TO OTHERS. A PARAPHILIA IS A NECESSARY BUT NOT A SUFFICIENT CONDITION FOR HAVING A PARAPHILIC

DISORDER. A PARAPHILIA BY ITSELF DOES NOT NECESSARILY JUSTIFY OR REQUIRE CLINICAL INTERVENTION.

IN THE DIAGNOSTIC CRITERIA SET FOR EACH OF THE LISTED PARAPHILIC DISORDERS, CRITERIA A SPECIFIES A QUALITATIVE NATURE OF THE PARAPHILIA, E.G., AN EROTIC FOCUS ON CHILDREN OR EXPOSING THE GENITALS TO STRANGERS; AND CRITERION B SPECIFIES THE NEGATIVE CONSEQUENCES OF THE PARAPHILIA, I.E., DISTRESS, IMPAIRMENT OR HARM TO OTHERS.

IN KEEPING WITH THE DISTINCTION BETWEEN PARAPHILIAS AND PARAPHILIC DISORDERS, A TERM DIAGNOSIS SHOULD BE RESERVED FOR INDIVIDUALS WHO MEET BOTH CRITERIA A AND B, I.E., INDIVIDUALS WHO HAVE A PARAPHILIC DISORDER. IF AN INDIVIDUAL MEETS CRITERION A BUT NOT CRITERION B, OR A PARTICULAR PARAPHILIA, A CIRCUMSTANCE THAT MIGHT ARISE WHEN A BENIGN PARAPHILIA IS DISCOVERED DURING THE CLINICAL INVESTIGATION OF SOME OTHER CONDITION, THEN THE INDIVIDUAL MAY BE SAID TO HAVE THAT PARAPHILIA BUT NOT A PARAPHILIC DISORDER."

THE DSM-V CONTINUES, "BECAUSE OF THE TWO-PRONGED NATURE OF DIAGNOSING PARAPHILIC DISORDERS, CLINICIAN-RATED OR SELF-RATED MEASURES AND SEVERITY ASSESSMENTS COULD ADDRESS EITHER THE STRENGTH OF THE PARAPHILIA ITSELF OR THE SERIOUSNESS OF ITS CONSEQUENCES, ALTHOUGH THE DISTRESS AND IMPAIRMENT STIPULATED IN THE CRITERION B ARE SPECIAL IN BEING THE IMMEDIATE OR ULTIMATE RESULT OF THE

PARAPHILIA AND NOT PRIMARILY RESULT OF SOME OTHER FACTOR, THE PHENOMENA OF REACTIVE DEPRESSION, ANXIETY, GUILT, POOR WORK HISTORY, IMPAIRED SOCIAL RELATIONS AND SO ON, ARE NOT UNIQUE IN THEMSELVES AND MAY BE QUANTIFIED WITH MULTI-PURPOSE MEASURES OF PSYCHOSOCIAL FUNCTIONING OR QUALITY OF LIFE.

THE MOST WIDELY APPLICABLE FRAMEWORK FOR ASSESSING THE STRENGTH OF A PARAPHILIA ITSELF IS ONE IN WHICH EXAMINEE'S PARAPHILIC SEXUAL FANTASIES, URGES OR BEHAVIORS ARE EVALUATED IN RELATION TO THEIR NORMOPHILIC SEXUAL INTERESTS AND BEHAVIORS.  IN A CLINICAL INTERVIEW OR ON SELF-ADMINISTERED QUESTIONNAIRES, EXAMINEES CAN BE ASKED WHETHER THEIR PARAPHILIC SEXUAL FANTASIES, URGES, OR BEHAVIORS ARE WEAKER THAN, APPROXIMATELY EQUAL TO, OR STRONGER THAN THEIR NORMOPHILIC SEXUAL INTERESTS AND BEHAVIORS.  THIS SAME TYPE OF COMPARISON CAN BE AND USUALLY IS EMPLOYED IN PSYCHOPHYSIOLOGICAL MEASURES OF SEXUAL INTEREST, SUCH AS PENILE PLETHYSMOGRAPHY IN MALES, REVIEWING TIME IN MALES AND FEMALES."

THE DSM-V CONTAINS A DIAGNOSIS LABELED "OTHER SPECIFIED PARAPHILIC DISORDERS."  IT STATES, "THIS CATEGORY APPLIES TO PRESENTATIONS IN WHICH SYMPTOMS, CHARACTERISTICS OF A PARAPHILIC DISORDER THAT CAUSE CLINICALLY SIGNIFICANT DISTRESS OR IMPAIRMENT IN SOCIAL, OCCUPATIONAL, OR OTHER IMPORTANT AREAS OF FUNCTIONING

PREDOMINATE BUT DO NOT MEET THE FULL CRITERIA FOR ANY OF THE DISORDERS IN THE PARAPHILIC DISORDER DIAGNOSTIC CLASS." THE OTHER SPECIFIED PARAPHILIC DISORDER CATEGORY IS USED IN SITUATIONS IN WHICH THE CLINICIAN CHOOSES TO COMMUNICATE THE SPECIFIC REASON THAT THE PRESENTATION DOES NOT MEET THE CRITERIA FOR ANY SPECIFIC PARAPHILIC DISORDER. THIS IS DONE BY RECORDING "OTHER SPECIFIED PARAPHILIC DISORDER" FOLLOWED BY THE SPECIFIC REASON, E.G., ZOOPHILIA.

EXAMPLES OF PRESENTATIONS THAT CAN BE SPECIFIED USING THE OTHER SPECIFIED DESIGNATION INCLUDE, BUT ARE NOT LIMITED TO, RECURRENT AND INTENSE SEXUAL AROUSAL INVOLVING TELEPHONE SCATOLOGIA, OBSCENE PHONE CALLS; NECROPHILIA, CORPSES; ZOOPHILIA, ANIMALS; COPROPHILIA, FECES; KLISMAPHILIA, ENEMAS; OR UROPHILIA, URINE, THAT HAS BEEN PRESENT FOR AT LEAST SIX MONTHS AND CAUSES MARKED DISTRESS OR IMPAIRMENT IN SOCIAL, OCCUPATIONAL OR OTHER IMPORTANT AREAS OF FUNCTIONING. OTHER SPECIFIED PARAPHILIC DISORDER CAN BE SPECIFIED AS IN REMISSION AND/OR AS OCCURRING IN A CONTROLLED ENVIRONMENT."

ALTHOUGH DR. LYTTON AND DR. PLAUD OPINED THAT THERE IS NO DIAGNOSIS UNDER THE DSM-V THAT PROPERLY CAN BE CALLED "OTHER SPECIFIED PARAPHILIC DISORDER, NON-CONSENT," THE COURT REJECTS THAT OPINION OF DR. LYTTON AND DR. PLAUD. INSTEAD, THE COURT FOCUSES ON WHETHER THE

GOVERNMENT HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT FAGAN SUFFERS FROM "OTHER SPECIFIED PARAPHILIC DISORDER, NON-CONSENT.

AS DESCRIBED IN THE DSM-V, THE DIAGNOSTIC CRITERIA FOR PARAPHILIC DISORDERS FOCUSES ON A, THE QUALITATIVE NATURE OF THE PARAPHILIA; AND B, THE NEGATIVE CONSEQUENCES OF THE PARAPHILIA, INCLUDING DISTRESS, IMPAIRMENT, AND HARM TO OTHERS. IN EXAMINING THE QUALITATIVE NATURE OF THE ALLEGED PARAPHILIA, THE DSM-V DISCUSSES A NEED TO FOCUS ON WHETHER THE PERSON HAS "ANY INTENSE AND PERSISTENT SEXUAL INTEREST OTHER THAN SEXUAL INTEREST IN GENITAL STIMULATION OR PREPARATORY FONDLING WITH PHENOTYPICALLY NORMAL, PHYSICALLY MATURE, CONSENTING HUMAN PARTNERS." THE PARAPHILIA NEEDS TO HAVE BEEN PRESENT FOR AT LEAST SIX MONTHS AND CAUSED MARKED DISTRESS IN SOCIAL, VOCATIONAL, AND OTHER IMPORTANT AREAS OF FUNCTIONING.

ALTHOUGH DR. LYTTON AND DR. PLAUD REJECT THE DIAGNOSIS OF OTHER SPECIFIED PARAPHILIC DISORDER NON-CONSENT, THEY EACH PERSUASIVELY EXPLAINED WHY THE DIAGNOSIS DID NOT FIT FAGAN, EVEN IF THE DIAGNOSIS EXISTS. DR. LYTTON AND DR. PLAUD NOTED THAT THE RECORD LACKED EVIDENCE THAT FAGAN HAD RECURRENT, INTENSE URGES OR FANTASIES ABOUT NON-CONSENSUAL SEX. IN SUPPORT, DR. PLAUD AND DR. LYTTON NOTED THE ABSENCE OF ANY SEXUAL OFFENDING WHILE INCARCERATED SINCE 2002, DESPITE THE PRESENCE OF

FEMALE STAFF. MOREOVER, EACH TESTIFIED ABOUT FAGAN'S TIME IN THE COMMUNITY FROM 1988 TO 2002. DOCTORS PLAUD AND LYTTON NOTED THE MULTITUDE OF ALLEGED VICTIMS BETWEEN 1988 TO 1989 THAT CAME TO LIGHT AFTER THE RACHEL HURLEY MURDER AND THE SEXUAL OFFENDING THAT TOOK PLACE IN 1990 AND 1991 BY FAGAN. THEY PROVIDED CONTEXT FOR THAT BEHAVIOR AND EXPLAINED THAT ALTHOUGH THE BEHAVIOR WAS CRIMINAL, THE BEHAVIOR WAS NOT DUE TO A PARAPHILIC DISORDER GROUNDED IN NON-CONSENSUAL SEX. THEY EXPLAINED THAT THE SOCIAL MILIEU IN FAGAN'S LIFE AT THE TIME INCLUDED FELLOW ADOLESCENTS WITH LITTLE SEEMING PARENTAL CONTROL, ACCESS TO MONEY, ALCOHOL AND DRUGS, AND ACCESS TO LOCATIONS TO HAVE PARTIES. NOTABLY, EVEN DOCTORS GRANEY AND PARKER DO NOT BELIEVE THAT FAGAN'S BEHAVIOR BETWEEN 1988 AND 1991 WARRANTED A PARAPHILIC DISORDER DIAGNOSIS NON-CONSENT AT THAT TIME.

MOVING FORWARD IN TIME, DOCTORS PLAUD AND LYTTON ACKNOWLEDGED THAT FAGAN ENGAGED IN AN INAPPROPRIATE SEXUAL RELATIONSHIP WITH MARISSA GOLDMAN BEGINNING WHEN SHE WAS AGE 14 AND HE WAS 23, CULMINATING IN THEIR MARRIAGE AND A CHILD THAT WAS BORN IN MARCH 2000 WHEN MARISSA WAS 18. NONETHELESS, EVEN THOUGH MARISSA VASQUEZ TESTIFIED AT TRIAL, SHE NEVER TESTIFIED THAT FAGAN ENGAGED IN NON-CONSENSUAL SEX WITH HER DURING THEIR RELATIONSHIP AFTER SHE HAD DECLINED HIS SEXUAL ADVANCES. AS FOR THE

2002 INCIDENT WITH MP, THE CONDUCT WAS, AS DR. LYTTON AND DR. PLAUD DESCRIBED, OPPORTUNISTICALLY CRIMINAL; IT, HOWEVER, WAS NOT DUE TO A PARAPHILIC DISORDER GROUNDED IN NON-CONSENT.

IN REJECTING DR. GRANEY'S AND DR. PARKER'S OPINION CONCERNING OTHER SPECIFIED PARAPHILIC DISORDER NON-CONSENT, THE COURT HAS ASSUMED, WITHOUT DECIDING THAT FAGAN'S SEXUAL ENCOUNTERS WITH THE VICTIMS DESCRIBED IN THE RECORD BETWEEN 1988 AND 1991, WERE OR BECAME NON-CONSENSUAL DURING THE ENCOUNTER. CF *FRANCES*, 686 F.3D AT 276. AND, OF COURSE, THE COURT HAS CONSIDERED FAGAN'S ENTIRE CRIMINAL BEHAVIOR AND HISTORY. SEE *PEREZ* AT 752 F.3D AT 407, 408, AND *ANTOINE*, 742 F.3D AT 167.

NONETHELESS, DR. PLAUD AND DR. LYTTON WERE MORE PERSUASIVE WHEN VIEWING THE RECORD AS A WHOLE IN EXPLAINING WHY FAGAN DOES NOT SUFFER FROM OTHER SPECIFIED PARAPHILIC DISORDER, NON-CONSENT. THE COURT ALSO NOTES AND APPRECIATES DR. GRANEY'S CANDOR THAT THIS CASE WAS NOT ONE OF HER CLEAR CUT CASES.

THE COURT ALSO HAS CONSIDERED THE SO-CALLED *WOODEN* FACTORS. SEE *WOODEN*, 693 F.3D AT 452 - 62. THE COURT FINDS THAT FAGAN DOES NOT HAVE INTENSE AND RECURRING SEXUALLY AROUSING FANTASIES AND SEXUAL URGES ABOUT NON-CONSENSUAL SEX. MOREOVER, FAGAN'S TESTIMONY AT TRIAL AND IN HIS DEPOSITION DID NOT CONTAIN COGNITIVE

DISTORTIONS OR THINKING ERRORS COMMON TO SEX OFFENDERS. FURTHERMORE, THE RECORD DOES NOT REFLECT THAT FAGAN HAS BEEN IMPULSIVE OVER THE PAST 14 YEARS OF INCARCERATION WITH RESPECT TO SEX, NON-CONSENSUAL SEX OR ANYTHING ELSE. CF *ANTOINE*, 742 F.3D AT PAGES 165 TO 167.

LIKEWISE, THE RECORD DOES NOT REFLECT THAT FAGAN HAS BEEN GROOMING ANY FUTURE SEXUAL VICTIMS. ADDITIONALLY, IN ACCORDANCE WITH *WOODEN*, I HAVE CONSIDERED FAGAN'S TESTIMONY. ALTHOUGH I DO NOT CREDIT ALL OF HIS TESTIMONY, I DO CREDIT THE FOLLOWING:

FAGAN DOES NOT STRUGGLE TO CONTROL HIS BEHAVIOR, INCLUDING HIS SEXUAL BEHAVIOR. FAGAN IS NOT SEXUALLY ATTRACTED TO NON-CONSENSUAL SEX. FAGAN IS NOT SEXUALLY ATTRIBUTED TO CHILDREN. FAGAN HAS NOT ENGAGED IN ANY SEXUAL MISCONDUCT IN PRISON.

THE COURT ALSO HAS CONSIDERED THE SO-CALLED DYNAMIC RISK FACTORS. ALTHOUGH FAGAN HAS UNDENIABLY HAD TROUBLES ON SUPERVISION IN THE PAST, THE COURT FINDS THAT HE POSSESSES SEXUAL SELF-REGULATIONS AND PERSONAL SELF-REGULATION. MOREOVER, HE WILL BE ON A THREE YEAR TERM OF SUPERVISED RELEASE WHERE HE WILL BE DRUG TESTED AND HAVE MENTAL HEALTH TREATMENT. HIS SISTER BECKY FAGAN REMAINS SUPPORTIVE. FURTHERMORE, FAGAN'S DENIAL OF SOME PAST OFFENDING IS NOT LINKED TO INCREASED RECIDIVISM RISKS.

HAVING REJECTED DR. GRANEY'S AND DR. PARKER'S DIAGNOSES OF OTHER SPECIFIED PARAPHILIC DISORDER NON-CONSENT, AS TO FAGAN, THE COURT PROBABLY NOT NEED PROCEED FURTHER WITH ITS ANALYSIS. CF *ANTOINE*, 742 F.3D AT 151. NONETHELESS, FOR COMPLETENESS, I WILL DISCUSS THE OTHER DIAGNOSES AND PRONG THREE.

AS FOR ANTISOCIAL PERSONALITY DISORDER, DR. LYTTON QUOTED THE DSM-V IN HER REPORT. THE DIAGNOSTIC CRITERIA IS SET OUT IN THE DSM-V AT SECTION 301.7. THE COURT CREDITS THE OPINIONS OF DOCTORS PLAUD AND LYTTON IN THIS CASE ON THIS DIAGNOSIS. FAGAN DOES NOT CURRENTLY SUFFER FROM ANTISOCIAL PERSONALITY DISORDER. ALTHOUGH FAGAN CERTAINLY HAS ENGAGED IN CONDUCT THAT COULD MEET THE CHECKLIST OF THE DIAGNOSES, HIS CONDUCT IN PRISON SINCE 2002 BELIES A CURRENT DIAGNOSES OF ANTI-SOCIAL PERSONALITY DISORDER.

AS THE DSM-V ITSELF STATES IN THE CONTEXT OF THE ANTISOCIAL PERSONALITY DISORDER SECTION, "ANTISOCIAL PERSONALITY DISORDER MUST BE DISTINGUISHED FROM CRIMINAL BEHAVIOR UNDERTAKEN FOR GAIN THAT IS NOT ACCOMPANIED BY THE PERSONALITY FEATURE CHARACTERISTICS OF THIS DISORDER. ONLY WHEN ANTISOCIAL PERSONALITY TRAITS ARE INFLEXIBLE, MALADAPTIVE, AND PERSISTENT AND CAUSE SIGNIFICANT FUNCTIONAL IMPAIRMENT OR SOME CHECKLIST DISTRESS DO THEY CONSTITUTE ANTISOCIAL PERSONALITY DISORDER.

FAGAN CERTAINLY HAS ENGAGED IN CRIMINAL BEHAVIOR FOR PERSONAL GAIN BUT FAGAN'S CONDUCT IN PRISON SINCE 2002 HAS NOT BEEN INFLEXIBLE AND MALADAPTIVE. DOCTORS PLAUD AND LYTTON'S OPINION ON THIS ISSUE WAS MORE PERSUASIVE THAN THE OPINION OF DR. GRANEY AND DR. PARKER.

AS FOR FAGAN'S COCAINE, ALCOHOL, AND MARIJUANA ABUSE, HE CERTAINLY HAS A HISTORY OF SUCH SUBSTANCE ABUSE.

IN SUM, THE GOVERNMENT HAS FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT FAGAN CURRENTLY SUFFERS FROM A SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER UNDER THE ADAM WALSH ACT. THE GOVERNMENT'S FAILURE OF PROOF AS TO PRONG II DOOMS ITS EFFORTS TO PROVE THAT AS A RESULT OF SUCH A SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER, THAT FAGAN WILL HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION.

NONETHELESS, EVEN IF THE GOVERNMENT HAD PROVEN PRONG II IN THIS CASE, THE GOVERNMENT HAS FAILED TO PROVE PRONG III BY CLEAR AND CONVINCING EVIDENCE.

UNDER THE ADAM WALSH ACT, THE THIRD PRONG "TURNS ON THE DEGREE OF THE PERSON'S VOLITIONAL IMPAIRMENT WHICH IMPACTS THE PERSON'S ABILITY TO REFRAIN FROM ACTING UPON HIS DEVIANT SEXUAL INTEREST." *BOLANDER*, 722 F.3D AT 207.

AS THE SUPREME COURT STATED IN *KANSAS V. CRANE*, 534 U.S. 407 AT PAGE 413 (2002), A PERSON'S LACK OF CONTROL OR INABILITY TO CONTROL HIS BEHAVIOR, "WILL NOT BE

DEMONSTRABLE WITH MATHEMATICAL PRECISION. IT IS ENOUGH TO SAY THAT THERE MUST BE PROOF OF SERIOUS DIFFICULTY IN CONTROLLING BEHAVIOR AND THIS, WHEN VIEWED IN LIGHT OF SUCH FEATURES OF THE CASE AS THE NATURE OF THE PSYCHIATRIC DIAGNOSES AND THE SEVERITY OF THE MENTAL DISORDER ITSELF, MUST BE SUFFICIENT TO DISTINGUISH THE DANGEROUS SEXUAL OFFENDER WHOSE SERIOUS MENTAL ILLNESS, ABNORMALITY OR DISORDER, SUBJECTS HIM TO CIVIL COMMITMENT FROM THE DANGEROUSNESS BUT TYPICAL RECIDIVIST CONVICTED IN AN ORDINARY CRIMINAL CASE."

HERE, AT PRONG III, THE GOVERNMENT HAS NOT MET ITS BURDEN OF PROOF. EVEN ASSUMING THAT FAGAN HAS MENTAL DISORDERS THAT DR. GRANEY AND DR. PARKER BELIEVE HE HAD, FAGAN HAS VOLITIONAL CONTROL. IN MAKING THIS FINDING, THE COURT AGAIN NOTES THE PRISON RECORD OF FAGAN SINCE 2002. THE COURT ALSO NOTES ITS DISCUSSION OF THE *WOODEN* FACTORS AND NOTES THAT IT CREDITS KEY PORTIONS OF FAGAN'S TESTIMONY ON VOLITIONAL CONTROL. THE COURT ALSO FINDS THAT THE OPINIONS ON PRONG III OF DR. LYTTON AND DR. PLAUD ARE BETTER REASONED, MORE THOROUGH, AND BETTER SUPPORTED BY THE RECORD THAN THE OPINIONS OF DR. GRANEY AND DR. PARKER.

ALTHOUGH FAGAN'S RELEASE PLAN IS NOT IDEAL, FAGAN DOES HAVE VOLITIONAL CONTROL. MOREOVER, HE HAS THE CAPACITY TO EARN A LIVING AND TO LIVE FREE OF ALCOHOL AND

DRUGS AND FREE OF FUTURE CRIMINAL CONDUCT. THE THREE YEAR TERM OF SUPERVISED RELEASE IS A PROTECTIVE FACTOR.

ESSENTIALLY, THE COURT FINDS THAT FAGAN FALLS IN THE HEARTLAND OF WHAT THE SUPREME COURT DESCRIBED IN *CRANE*. HE IS THE DANGEROUS BUT TYPICAL RECIDIVIST CONVICTED IN A CRIMINAL CASE. SECTION 4248 IS NOT MEANT TO BE A CRIMINAL SENTENCING DO-OVER. THE FOCUS AT THE THIRD PRONG IS ON VOLITIONAL CONTROL. FAGAN HAS VOLITIONAL CONTROL.

IN SUM, BASED ON THE TOTAL RECORD, THE GOVERNMENT HAS FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT FAGAN LACKS VOLITIONAL CONTROL. THUS, BECAUSE THE GOVERNMENT HAS FAILED TO PROVE ITS CASE AT PRONG II AND PRONG III, JUDGMENT WILL BE ENTERED IN FAVOR OF WILLIAM FAGAN AND AGAINST THE UNITED STATES.

I WILL INCORPORATE BY REFERENCE ALL OF WHICH I HAVE SAID HERE TODAY AND A SHORT ORDER WILL BE ENTERED INCORPORATING THOSE FINDINGS AND CONCLUSIONS BY REFERENCE.

I DO THANK COUNSEL FOR THEIR WORK IN CONNECTION WITH THE CASE. IS THERE ANYTHING ELSE FROM THE UNITED STATES?

**MR. LOCKRIDGE:** NO, YOUR HONOR.

**THE COURT:** ANYTHING ELSE FROM THE RESPONDENT?

**MR. CRAVEN:** NO, YOUR HONOR. THANK YOU.

**THE COURT:** THANK COUNSEL FOR THEIR WORK. WE'LL BE IN RECESS.

END OF TRANSCRIPT

CERTIFICATE

THIS IS TO CERTIFY THAT THE FOREGOING TRANSCRIPT OF PROCEEDINGS TAKEN AT THE CIVIL SESSION OF UNITED STATES DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF THE PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

THIS THE 30TH DAY OF MAY, 2016.

/S/ DONNA J. TOMAWSKI

DONNA J. TOMAWSKI
OFFICIAL COURT REPORTER